ETHEL FORTNER, *Admrx.* OF THE ESTATE OF
WILLIAM D. FORTNER, *Deceased*

*v.*

RONNIE DALE NAPIER *and* DAVIS WHOLESALE CO., INC.,
*A Corporation*

*and*

ETHEL FORTNER

*v.*

RONNIE DALE NAPIER *and* DAVIS WHOLESALE CO., INC.,
*A Corporation*

(No. 12758)

Submitted April 29, 1969.        Decided June 24, 1969.

*Levy & Patton, Joe N. Patton,* for appellants.

*Joseph Luchini, W. H. File, Jr., Joe E. Wilkinson,* for appellee.

BROWNING, JUDGE:

Ethel Fortner, Administratrix of the Estate of William D. Fortner, instituted this action in the Circuit Court of Lincoln County to recover damages for the wrongful death of her decedent occasioned by injuries received in a collision on October 1, 1965, between the automobile operated by William D. Fortner and the truck owned by the defendant Davis Wholesale Company, Incorporated, and operated by the defendant Ronnie Dale Napier. She also instituted an action in her own right for injuries received by her as a guest passenger in the vehicle of her decedent. The defendants answered denying any negligence on their part and asserting contributory negligence on the part of the decedent William D. Fortner. The actions were consolidated for trial and the jury returned a verdict totalling $21,000, specifying $10,000 for the wrongful death, $6,000, funeral, hospital and other expenses and $5,000 for the plaintiff, in her individual

capacity. Judgment was entered thereon and on motion of the plaintiff the $6,000 award for funeral, hospital and other expenses was reduced to $1,816.05, that being the amount of expenses proved by the evidence.

The accident occurred on October 1, 1965, on State Route 10 in Lincoln County, near the intersection of that road with what is known as the Little Harts Creek Road. In that vicinity State Route 10, proceeding in a northerly direction from Logan to Huntington, crosses a one-lane bridge into a small business community and is reasonably straight for a short distance to a point where the Little Harts Creek Road intersects from the west. The highway is marked with a double line from a point near the bridge to the intersection with the Little Harts Creek Road. The accident occurred at approximately four-thirty in the afternoon and the weather was clear and dry. Plaintiff's decedent, a man seventy-five years of age was delivering newspapers by automobile, his wife accompanying and assisting him by rolling up the newspapers and inserting them in the proper delivery box by the roadside. Plaintiff's decedent had been driving north from Logan, crossed the bridge and had delivered a paper to a box by Hill's store, proceeded into the intersection and was making a left turn into Little Harts Creek Road when his automobile was struck by the defendant's truck, which was also traveling in a northerly direction. After the collision both vehicles were driven up an embankment where the truck struck and severed a telephone pole, then proceeded on to strike and partially destroy a fence enclosing a school yard. Although several of plaintiff's witnesses heard the crash, only one testified that he had actually seen the collision, the others merely testifying as to the position in which the vehicles came to rest. Edward Lee Workman testified for the plaintiff that he had been sitting on the porch of Vance's Keystone Station located directly opposite the Little Harts Creek Road; that he saw the plaintiff's decedent pull off State Route 10 at Hill's Grocery Store and, after deposit-

ing a paper, re-enter State Route 10, the road being clear at that time. He further testified that plaintiff's decedent turned on his left turn signal, proceeded to the intersection and, "He started to turn up Little Harts Creek Road. He made his turn. I looked up there and seen a truck coming through the bridge. I looked back to see if the old man was going to make it. About that time the truck pulled up beside his car and hit him, just clobbered him, I never heard no horn or no brakes or nothing." Workman also testified that the truck was proceeding at a speed of fifty or sixty miles an hour and after it came off the bridge stayed on the left of the double line until the collision occurred.

Corporal Spence of the Department of Public Safety, who arrived at the scene at approximately 5:25 o'clock, testified as to certain distances, the truck being thirty feet from the roadway up the embankment, the automobile located to the right rear of the truck sixteen feet from the edge of the pavement, the power pole was completely severed and the fence was severely damaged by the truck; that there were no skid marks and that when he tested the truck brakes, the engine not running, the brake pedal went to within one-half inch of the floor. He further testified that the distance from a power pole located on Hill's property near the store to the middle of the intersection was 125 feet. Mr. Hill testified that his mail box was 257 feet from the intersection, he having measured the distance the day before testifying. Plaintiff, Mrs. Fortner, testified that she and her husband delivered a paper to Hill's Grocery in a box attached to a tree; that her husband pulled back upon the highway, turned his signal light on and had started to make the turn into Little Harts Creek when they were struck by the defendants' vehicle; that she heard no horn nor the noise of any brakes.

For the defendant, Cleve Vance testified that: he was standing in front of the Amoco Station a short distance from the bridge and saw the plaintiff's vehicle emerge

from the bridge and pull off to the right of the road by Hill's; a paper was deposited in the box and plaintiff's decedent then pulled back only partially upon the highway and proceeded for fifty feet when he turned his entire vehicle off the highway to the right and, as the defendants' truck got within two car lengths of the decedent's automobile, decedent turned his vehicle upon and across the highway in front of the vehicle of the defendant; that the truck driver blew his horn and swerved to the left lane and tried to pass the car to avoid hitting him. In a statement given to State Police Corporal Spence shortly after the accident, the witness said that decedent's vehicle did not pull upon the roadway after delivering the paper to Hill's until he was within two or three car lengths of the intersection and made no mention of the fact that decedent might have had his entire vehicle off the roadway before turning; witness also estimated the speed of the truck to be 35 to 40 miles an hour and stated that the truck was on the right side of the road until just before the collision. The defendant Napier testified that he had completed his deliveries for the day and was returning to Huntington on State Route 10; that the truck was an International 2½ ton, equipped with air booster brakes that only work when the engine is running and that the brakes were in good condition. He stated that as he came off the bridge and approached the intersection the deceased's automobile pulled in front of him; that deceased's automobile came from the right side of the road from behind some parked cars and "angled" across in front of him; that he blew his horn and turned into the left lane where the vehicles collided; that his speed was approximately 25 to 30 miles an hour, that his truck climbed the embankment which was eight or ten feet high, struck the telephone pole breaking it in two, and then hit the steel fence. As heretofore stated the jury returned a verdict for plaintiffs in a total amount of $21,000, $4,183.95 of which was remitted. A motion to set aside the verdict and award a new trial was overruled and on application of the defendants this Court

granted an appeal and supersedeas on July 22, 1968. The errors assigned in this Court may be summarized as follows: (1) Consolidating the actions; (2) amending the jury verdicts; (3) granting plaintiff's motion for re-mittitur; (4) the verdict for Mrs. Fortner was excessive; (5) improper argument of counsel; (6) the giving of erroneous instructions in behalf of the plaintiffs; and (7) the evidence of primary negligence was not such as to support the verdicts of the jury and if so upon all of the evidence the deceased was shown to be contribu-torily negligent as a matter of law.

Rule 42 (a), R.C.P., provides in part that "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; . . . ." On Novem-ber 9, 1967, at a pre-trial conference the trial judge raised the question of consolidation of the cases. Counsel for the plaintiffs agreed to the consolidation whereupon Mr. Patton, counsel for the defendants, stated, "If the consolidation is proper under the rules, I have no objec-tion." However, after further colloquy between the court and counsel the court stated that he was "going to order a consolidation of the cases." Whereupon Mr. Patton said: "Exception." We are of the view that the trial court's action in consolidating the cases was not reversible error. See *Smith v. Rude Carrier Corp.*, 151 W. Va. 322, 151 S. E. 2d 738; *Bank of Ripley v. Thompson,* 149 W. Va. 183, 139 S. E.2d 267; and *Hoffman v. Stuart,* 188 Va. 785, 51 S. E.2d 239, 6 A. L. R.2d 247.

As to the assignment of error regarding the moulding or amendment of the verdict, when the jury returned to the courtroom the following colloquy took place be-tween the trial judge and the jury: "The Court: Have you agreed upon a verdict? The Jury: We have, Your Honor. The Court: Would you hand the verdict to the Clerk. The Clerk will read your verdict. You hearken to your verdict. The Clerk: We, the jury, find in favor of

the plaintiff, the sum of $21,000.00, the death, $10,000.00, earnings, $6,000.00, medical expenses, $5,000.00. Signed: A. Gale Thomas, Foreman." Perhaps what occurred thereafter should not be paraphrased but the record should be quoted directly and a verbatim account of what transpired follows:

"The Court: Is there only one verdict?

"Mr. Patton: We wonder, sir, if that was one or two.

"The Court: In this case, I don't want to confuse you at all, I want to be sure now that we understand this. I think in this case you need to have three separate verdicts. Did you mean to find for Mrs. Fortner for her own injuries any thing?

"A. Gale Thomas: The wages and the medical expenses. The medical expenses for her and her husband, what she has already incurred and what might happen for her own self.

"The Court: You think that is $5,000.00?

"A. Gale Thomas: Yes, sir.

"The Court: You come up here and help me fiill this one in. In the case of Mrs. Fortner herself, you would assess her damage at $5,000.00 for her personal injuries?

"Mr. Thomas: Yes, sir.

"The Court: All right. You sign that one. As for the death of Mr. Fortner, $10,000.00. Is that correct?

"Mr. Thomas: That is correct.

"The Court: You sign this one. This last one is for funeral, hospital and other expenses that would include earnings, is that correct, that would be $6,000.00? Is that right?

"Mr. Thomas: That is right. (Signs the verdict)

"The Court: The idea is that you want the whole thing to amount to $21,000.00?

"Mr. Thomas: Yes, sir.

"The Court: Now, let me read the verdicts here and the jury see if this is what you want your verdict to be. If it varies in any way from it, you let me know. 'We, the jury, upon the issue joined between Ethel Fortner as Administratrix of the estate of William D. Fortner, deceased, against Ronnie Dale Napier and Davis Wholesale Company, Inc., a corporation, find for the plaintiff Administratrix and assess the damage at $10,000.00. A. Gale Thomas.' Is that your verdict for the death, ladies and gentlemen of the jury?

"The Jury: Yes.

"The Court: The second verdict, 'We, the jury, upon the issue joined between Ethel Fortner as Administratrix of the estate of William D. Fortner, deceased, against Ronnie Dale Napier and Davis Wholesale Company, Inc., a corporation, further find for the plaintiff Administratrix for funeral, hospital and other expenses in the amount of $6,000.00 A. Gale Thomas.' Is that your verdict?

"The Jury: Yes.

"The Court: The third verdict, 'We, the jury, upon the issue joined between the plaintiff, Ethel Fortner,' that means in her own right, 'and the defendant, Ronnie Dale Napier and Davis Wholesale Company, Inc., a corporation, find for the plaintiff and assess her damages in the sum of $5,000.00 A. Gale Thomas.' Is that your verdict in this case?

"The Jury: Yes.

"The Court: So say you all?

"The Jury: Yes.

"The Court: Is there any question about this verdict?" Counsel for the defendant thereupon moved that "the verdict be set aside as contrary to the law and the evidence and for the other reasons to be assigned in writing within the ten day period permitted by the rules." The

court, after advising counsel that his motion would be taken under advisement stated, "The jury is excused from this case." It will be noted that there was no objection to the action of the trial judge in preparing three verdicts which he believed to be in compliance with the composite verdict which the jury originally returned. We find no error in this action in view of the fact that each of the prepared verdicts was signed by the jury foreman, all of the members of the jury were asked if such was their verdict, all answered in the affirmative and, inasmuch as this procedure took place before the jury was discharged, particularly in view of the fact that counsel for the defendant made no objection to the procedure followed by the able trial judge.

The jury verdicts were returned on December 4, 1967, and on January 12, 1968, counsel for the plaintiff filed a written motion with the court ". . . that said verdict of the jury for Six Thousand ($6,000.00) Dollars be amended to One Thousand Eight Hundred Sixteen and 05/100 ($1,816.05) Dollars, the amount proved by the plaintiffs and that the plaintiff Administratrix by this motion of record remits to the defendants the sum of Four Thousand One Hundred Eighty-three and 95/100 ($4,183.95) Dollars; . . ." which motion and remittitur was sustained. It is difficult to understand how a defendant in an action for personal injury or wrongful death suffers from the granting of a motion by the plaintiff to remit a portion of the jury verdict for the plaintiff. It is apparent from an examination of the decisions of this Court that it has adopted the minority rule relating to remittitur; that is, where there is no data by which the amount of the excess is definitely ascertainable that a remittitur is impermissible. However, where the amount of the excess is definitely ascertainable, the remittitur may be employed. *Bragg* v. *Whitten Transfer Co.,* 125 W. Va. 722, 26 S. E.2d 217. For a full discussion of this question see *Browder* v. *Webster County Court,* 145 W. Va. 696, 116 S. E.2d 867, and the many authorities cited therein.

Here, the amount of the excess of the verdict to which the motion for remittitur was granted was definitely ascertainable, and we find no error in the action of the court in sustaining the plaintiff's motion, even assuming that a defendant can ever be prejudiced in such a case.

The evidence to support the verdict for Mrs. Fortner, the individual plaintiff, in the sum of $5,000 was weak. The physician who examined her shortly after the collision testified at the trial and stated that his diagnosis was a "sprained neck and sprain of the left shoulder." He ordered a steroid injection, neck support and physical therapy treatment, some of which she received apparently at a hospital in Logan and later at a hospital in Columbus, Ohio. Mrs. Fortner testified approximately two years after she was injured and stated that she was still suffering from pain resulting from her injuries. There was no medical or other evidence to contradict either her or her physician. We cannot say that the amount of the jury verdict was so large as to indicate passion, partiality, prejudice or corruption which is the test that this Court has consistently applied to jury verdicts where it was contended that they were excessive or inadequate.

Counsel for the appellees admit that improper argument was made to the jury but assert that it was harmless error and not objected to at the time the argument was made or before the jury retired to consider of its verdict. It seems from colloquy between the court and counsel upon a motion to set aside the verdicts and grant the defendants a new trial that there had been an agreement between the court and counsel that there would be no argument before the jury upon the theory that the deceased's life expectancy, which had been stipulated as 8.1 years, could be multiplied by the earning capacity of the decedent to determine the loss of future earnings. It is not denied that one of the attorneys for plaintiffs who was not aware of such agreement did argue exactly that which it had been agreed would not be mentioned. It will be observed, however, that when the motion for

remittitur was sustained by the trial court, the verdict for wrongful death was reduced to the sum of $11,816.05, which amounted to only $10,000, the amount to which plaintiff, as decedent's administratrix, was entitled without proving any loss of earnings plus the actual medical and funeral expenses proved at the trial. Furthermore, there was no objection by counsel for the defendants at the time the erroneous argument was made to the jury nor thereafter until it was assigned as a ground for the setting aside of the verdict and the granting of a new trial.

Rule 51, R.C.P., states in part: "No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection." As to the plaintiff's instructions, the giving of which is assigned as error, only two merit any discussion. Plaintiff's Instruction No. 6 informed the jury that Code, 17C-7-6(2), as amended, applied to the case and provides that no motorist shall attempt to pass or drive to the left side of a roadway within one hundred feet of an intersection. It is contended here that it was error to give that instruction inasmuch as there was no evidence to establish the fact that the defendant was attempting to pass the vehicle driven by the deceased immediately prior to the collision. That statutory provision is in the alternative and forbids the driving of a vehicle to the left side of a highway at such a place whether another vehicle is being passed or not. Furthermore, it is the view of this Court that the evidence was such as to present a question of fact for the jury as to whether the defendant was attempting to pass the deceased's vehicle just prior to the collision. One of appellants' chief assignments of error is the trial court's giving, over objection, of plaintiff's Instruction No. 7. In order to clearly state what transpired at the time this instruction was offered and later given as amended, Instruction No. 7 as originally

offered read: "The Court instructs the jury that West Virginia Statute Chapter 17C-7 provides that no vehicle shall overtake or pass another vehicle where there is a double line marking on the highway, and that the crossing of such double line shall constitute a violation of the Statute.

"Therefore, if you find from a preponderance of the evidence in this case that Ronnie Dale Napier violated the Statute by passing over a double line as testified to in this case, then he was guilty of prima facie negligence, and if such negligence was the proximate cause of the resulting damages and death of the deceased, William D. Fortner, the jury should find a verdict in favor of both plaintiffs, provided that you further find that the deceased driver was not guilty of any contributory negligence which proximately caused the accident in question." The trial court questioned the language "passing over a double line," and counsel for the plaintiff agreed that that language be changed to read "violated the statute by attempting to pass the Fortner car at a place where there was a double line." The Judge further suggested that, where the instruction read "if you further find that such negligence was the proximate cause," that counsel "put in sole proximate cause, - - -"

"Mr. Patton: (interposing) He's got contributory negligence below, which I think is to our advantage.

"Mr. Luchini: Let me put in 'the sole proximate cause.' and I will take that out below. . . .

"The Court: All right. Now is there any objection?

"Mr. Patton: The objection of the defendants to Plaintiff's Instruction No. 7 is based on the fact that there is no evidence in this case which was not refuted to the extent that we would be entitled to a directed verdict. We would be entitled to it on the point of Ronnie Dale Napier having attempted to pass any vehicle at a place where there was a double line.

"The Court:  Given as amended.

"Mr. Patton:  Exception."

This is plaintiff's Instruction No. 7, given as amended: "The Court instructs the jury that West Virginia Statute Chapter 17C-7 provides that no vehicle shall overtake or pass another vehicle where there is a double line marking on the highway, and that the crossing of such double line shall constitute a violation of the Statute.

"Therefore, if you find from a preponderance of the evidence in this case that Ronnie Dale Napier violated the Statute by attempting to pass the Fortner car at a place where there was a double line, then he was guilty of prima facie negligence, and if you further find that such negligence was the sole proximate cause of the resulting damages and death of the deceased, William D. Fortner, the jury should find a verdict in favor of both plaintiffs." As to whether this instruction as amended specifically negatived contributory negligence on the part of the plaintiff see *Graham* v. *Wriston,* 146 W. Va. 484, 120 S. E.2d 713, and the many decisions of this Court cited and quoted from therein and *Yates* v. *Mancari,* decided June 10, 1969, 153 W. Va. 350, 168 S. E.2d 746. A very careful evaluation of Instruction No. 7 as offered, the colloquy between the Court and counsel and particularly the reply of Mr. Patton of counsel for the defendants when asked by the court if there was any objection to the giving of the amended instruction will show that such general objection does not meet the stringent requirement of Rule 51, R.C.P., stating "distinctly" the ground of objection to an instruction.

As heretofore stated, the collision between the defendant's truck and the deceased's passenger vehicle occurred on the Logan-Huntington road in Lincoln County on a clear day in October at approximately 4:30 p.m. Both vehicles were travelling in a northerly direction toward Huntington just prior to the collision and it is undisputed that approximately three hundred feet south of Little

Harts Creek intersection there is a one-lane bridge. It is further undisputed that at the time defendant Napier emerged from the bridge, the deceased's vehicle was near the intersection. The evidence is undisputed that from a point near the northerly end of the bridge to the Little Harts Creek intersection there is a double line. If this collision and resultant death and injury occurred as testified to by the defendant Napier and the witness Cleve Vance and assuming that there were no physical facts in contradiction thereof that the jury could find overcame such oral testimony, Napier was guilty of no primary negligence, and the deceased driver was guilty of the worst kind of primary negligence. The defendant testified that after he crossed the bridge he drove to the right of the center line of the highway at a speed of "approximately 25 to 30 miles per hour" and that his only reason for cutting across the double line was an attempt to avoid striking the deceased's automobile. He stated that when he got near the Harts Creek intersection the deceased's car "came from behind some parked cars" and "just pulled angling across the road" and that he was unable to avoid a collision although he blew his horn, applied his brakes and "cut the wheels, cutting into the other lane of traffic." Defense witness Cleve Vance corroborates Napier in his description of what happened just prior to the collision. That witness said that the deceased Fortner "pulled all four wheels off the highway" and when the truck got approximately "two car lengths to him," the deceased pulled back across the road in front of the truck. This witness states that the deceased's automobile was only about fifty feet from the Harts Creek intersection when he turned his car into the lane of traffic on which the truck was proceeding. However, there was evidence to the contrary. Edward Workman, a witness for the plaintiff, testified that he was sitting on the porch of the Keystone Gasoline station which is directly opposite the Harts Creek intersection and probably fifty or sixty feet from the center of it. He stated that he saw the deceased drive his car partially off the high-

way at Hill's Grocery, saw the wife place the newspaper in the box, drive back completely upon the highway and proceed to the Harts Creek Intersection with his signal light on. He stated that the front end of the Fortner car had made the turn into the intersection and back end was "just going on across" the double line when the collision occurred. He was asked about the speed of the defendants' truck and stated that when "he come through the bridge he laid down on it, I mean, he opened her up." He stated in answer to another question that the truck was being driven, in his opinion, "about 50 or 60 miles per hour" at the time of the collision. He stated further that when the truck came off the bridge, it was on the left side of the highway and remained there until the collision with the Fortner car. Another witness testified that he was near the scene of the collision, saw the paper delivered at Hill's Grocery, heard the impact of the collision, and when he looked, the Fortner car was in the intersection and was there struck by the truck. He stated that he heard "no brakes, no noise." Mr. Vance, who operated Hill's Grocery, stated that he was behind his counter and did not see the collision but that he heard a "tremendous crash." He testified that he had measured the distance from the mail box where the newspaper was delivered to the center of the intersection and that it was 257 feet between those points. He further stated that the distance from the collision to the place where the telephone pole was severed was 73 feet and that the school fence which was penetrated was fifteen feet beyond the last mentioned point. Mrs. Fortner testified that after they placed the paper in the mail box that her husband "pulled back on the road as usual," put on his signal light and when he got to the intersection "started to make his turn" and that she does not remember much of what happened thereafter.

It is evident that this jury heard two extremely conflicting versions of what caused the collision that resulted in this litigation. The credible circumstantial evi-

dence is on the side of the plaintiffs. It is reasonable that this jury could not believe that a truck being driven 25 to 30 miles an hour could strike a passenger vehicle near the left front door, push it before it a distance of 73 feet, part of it up hill, completely sever a telephone pole, continue beyond that point to an iron fence and partially knock it down. This Court has held that "where credible circumstantial evidence establishes a prima facie case of negligence a jury question exists and it is for the jury to determine whether it is sufficient to overcome direct testimony to the contrary." *Smith* v. *Rude Carrier Corp.*, 151 W. Va. 322, 151 S. E.2d 738, and previous decisions of this Court cited in the opinion thereof. In this case both "credible circumstantial evidence" and eye witness testimony was adduced from which this jury could have found for the plaintiffs as it did. The applicable principle of law has been stated many times but perhaps no better than in the second point of the syllabus in *French* v. *Sinkford*, 132 W. Va. 66, 54 S. E.2d 38: "Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." We find no prejudicial error in the trial of this case and therefore the final judgment of the Circuit Court of Lincoln County will be affirmed.

*Affirmed.*