519 S.E.2d 166

**Lori TOLER, Plaintiff Below, Appellee,**

v.

**Jody HAGER, Defendant Below, Appellant.**

No. 25477.

Supreme Court of Appeals of West Virginia.

Submitted April 13, 1999.

Decided July 14, 1999.

---

Donald C. Wandling, Esq., Avis, Witten & Wandling, Logan, West Virginia, Attorney for the Appellee.

Brent K. Kesner, Esq., Daniel W. Greear, Esq., Ellen R. Archibald, Esq., Kesner, Kesner & Bramble, Charleston, West Virginia, Attorneys for the Appellant.

MAYNARD, Justice:

The appellant, Jody Hager, seeks reversal of two orders entered by the Circuit Court of Logan County, West Virginia. Following a trial on liability and damages for personal injuries, the judge refused to accept the verdict of the jury regarding the appellee, Lori Toler. Instead, the judge gave the jury unsolicited instructions on damages and returned the jury to the jury room three times to reconsider before accepting the verdict. The judgment order, entered on December 8, 1997, awarded the appellee, Lori Toler, $2042.00 for medical expenses and $100.00 for pain and suffering. The appellant moved to reinstate the original jury verdict. The appellee moved for a new trial on damages for pain and suffering, which was granted in a post-trial order entered on April 27, 1998. The appellant seeks to have the original jury verdict reinstated; in the alternative, the appellant requests that the order awarding a new trial be reversed and that the judgment

order be reinstated. We believe the circuit court invaded the province of the jury, and therefore, we reverse both orders and reinstate the original jury verdict. However, the parties are not foreclosed from seeking a new trial.

## I.

### FACTS

On January 23, 1996, Mary Burgess, her five-year-old son, David, and stepdaughter, Lori Toler, were traveling on Route 10 near Lyburn in Logan County, West Virginia. Mary Burgess was driving a 1989 Oldsmobile Cutlass; David was riding in the back seat; the appellee was a front seat passenger. While attempting to make a left turn, Burgess stopped to allow a vehicle to exit the road she wished to enter. After starting forward again, Burgess stopped suddenly and was bumped from behind by a Chevrolet S–10 pickup truck driven by the appellant. There is no dispute that the vehicles suffered minimal damage and the police were not called to the scene.

Later that afternoon, Burgess, her son, and the appellee went to the emergency room at Logan General Hospital.[1] Six days later, the appellee was still complaining of pain in her neck and back. She made an office visit to Dr. Ramanaban Padmanaban, an orthopedic surgeon at Logan General Hospital. Toler was diagnosed with a "cervical and upper and lower back strain" with no neurological deficit. The doctor testified at trial that the appellee was not suffering from muscle spasms, but, upon examination, she stated that her muscles were sore. Dr. Padmanaban prescribed Darvocet, an anti-inflammatory medication and muscle relaxants. The appellee next visited Dr. Padmanaban on February 12, 1996. During that visit, she complained of "pain, soreness and stiffness in the neck, soreness and stiffness in the back, also." Dr. Padmanaban prescribed physical therapy, which was provided at Logan General Hospital. Dr. Padmanaban testified that on the fourth and last visit, the appellee

---

1. David settled out of court for $500.00. At trial, Burgess received nothing and is not involved in this appeal.

"had an excellent range of motion in the neck and back. There was no restrictions.—She was released from therapy. Since she was having no problem and there was no neurological deficit, I released her to come back and see me on a necessary basis." The appellee was released from treatment at that time and did not return to the doctor.

Burgess and Toler filed personal actions against Hager. The actions were consolidated for trial. At trial, the following question was posed to Dr. Padmanaban by the appellee's attorney: "Is it your opinion to a reasonable degree of medical probability that, based upon the history that Lori Toler gave you, your examinations of her and test results, that the diagnosis of neck and low back strain was caused by the traffic accident?" The doctor answered that it was his opinion that if Toler had experienced no other injuries, "then from the history and examination, the problem she had was caused by the accident[.]" Dr. Padmanaban believes Toler suffers from no permanent injury.

Besides hearing Dr. Padmanaban's testimony, the jury viewed the video testimony of the appellant's expert, Dr. Paul Bachwitt, an orthopedic surgeon, and heard the testimony of the appellant's accident reconstructionist, Dr. Craig Depkin. The jury saw photographs of the damage to the vehicles following the collision.

Dr. Bachwitt testified that he examined the appellee on March 10, 1997. Dr. Bachwitt noted that Dr. Padmanaban released the appellee from treatment on March 25, 1996 with excellent range of motion in the back and neck with no neurological deficit. She was released with no restrictions. Dr. Bachwitt reviewed Logan General Hospital's x-rays and reports and then proceeded to take his own x-rays of the appellee's neck and back. Dr. Bachwitt saw no abnormalities in the cervical spine or the lumbar spine. The doctor testified that upon examination of the appellee, the results of the testing differed depending on whether the appellee understood she was being tested or whether the test was performed as a distraction test. He stated, "This is contradictory and not explainable by orthopedic injury or pathology, either one." The doctor "saw no objective evidence why she should complain of stiffness in the neck and low back." Dr. Bachwitt testified that to a reasonable degree of medical certainty he felt the appellee did not suffer a permanent injury in the motor vehicle accident, was not disabled for any significant period of time and would require no future medical treatment or care.

Dr. Bachwitt further testified that the appellee told him she was attending college at the time of the accident and had missed no classes; she was also able to clean her house and dress and care for herself with no assistance. Dr. Bachwitt disagreed with Dr. Padmanaban's diagnosis of neck and back strain; Dr. Bachwitt testified that in his professional opinion he did not believe the appellee stretched the muscles in her neck or back from such a slight impact. However, he agreed it was not unreasonable to treat an individual's subjective complaints.

Dr. Depkin, a mechanical engineer, was called by the defense to testify as an accident reconstructionist. He testified that the damage to the two vehicles involved in the accident was so minimal that accident reconstruction was not possible; rather, an impact analysis was performed. He stated that at the time of impact, the acceleration in the front to rear direction of the head of the occupants of the Oldsmobile was the type of acceleration that people experience when rising from a sitting to a standing position. He also testified that immediately prior to impact, the pickup was traveling two and one-half miles per hour.

At the close of the trial, the only question presented to the jury on the verdict form relating to the appellee was the assessment of damages. The question was presented in the following manner:

5. We, the jury, assess damages to the Plaintiff, Lori Toler, as follows:
Medical Expenses, travel and other expenses to date: _____
Pain and suffering, mental anguish and loss of enjoyment of life to date: _____

Upon consideration of the evidence presented, the jury returned a verdict of $0 for the appellee. This was a verdict for the defendant which the judge refused to accept.

Instead, the judge informed the jury, "The Court cannot accept the verdict forms as submitted, and will have to resubmit the matter to the jury for the completion of part No. 5." The jury deliberated and returned a verdict of $53.00 in medical expenses and $0 for pain and suffering. The judge responded by stating, "I must inform the jury that, once again, I cannot accept the verdict form as submitted. The matters or the amounts set forth in item No. 5 are insufficient as a matter of law, so I'll have to resubmit this for further consideration. You will be instructed to continue your deliberations." The jury again deliberated and awarded Toler $2042.00 for medical expenses and $0 for pain and suffering. Upon receiving the verdict, the judge stated, "Members of the panel, I can now accept the verdict form on the first part of question No. 5, but not on the second part, so I'll have to send you back for additional work on the second part of question No. 5." The jury once again deliberated and awarded Toler $2042.00 for medical expenses and $100.00 for pain and suffering. The judge finally responded by stating, "The Court would find that the verdict form would be acceptable. I'll read the verdict."

Hager filed a motion for reinstatement of the original jury verdict. Following the hearing, the court entered judgment on the jury's fourth verdict, noting the parties' objections, thereby implicitly denying Hager's motion. Toler then filed a motion for a new trial, claiming the pain and suffering award was inadequate. On April 27, 1998, the court entered an order which states that "the Motion for a New Trial is hereby granted on the basis that the jury's award for pain and suffering is inadequate; the Court does further ORDER and ADJUDGE that this matter will be set for trial upon the issue of damages." Hager appeals from these orders.

## II.

## STANDARD OF REVIEW

■ The circuit court found the verdict was insufficient as a matter of law and instructed the jury to continue deliberating on three separate occasions. "This Court reviews the circuit court's final order and ulti-mate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

■ The trial court also granted a new trial on the issue of pain and suffering.

A motion for a new trial is governed by a different standard than a motion for a directed verdict. When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure*, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

Syllabus Point 3, *In re State Public Bldg. Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).

## III.

## PROVINCE OF THE JURY

■ On appeal, the appellant argues that because the question of damages is a question for the jury, and in this case, the jury's original verdict was in proper form and was supported by the evidence, the circuit court erred by entering the judgment order and by denying his motion for reinstatement. Alternatively, the appellant argues that even if the original jury verdict is incorrect, the judgment order's nominal award for pain and suffering is adequate as a matter of law in light of the appellee's insubstantial and temporary injury; therefore, the circuit court erred in granting the appellee a new trial. The appellee argues the circuit court did not usurp the jury's function in setting aside the original verdict nor did the court abuse its

discretion in awarding a new trial. For the reasons set forth below, we believe the jury's original verdict should be reinstated and both parties should be granted ten days in which to file a motion for a new trial.

 The question we first must resolve is whether the circuit court improperly invaded the province of the jury when the judge refused to accept the jury's original verdict for the defendant and instructed the jury to return to the jury room and, in essence, return a verdict for the plaintiff. This Court has previously said, " 'It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony is conflicting.' Point 3, Syllabus, *Long v. City of Weirton,* [158] W.Va. [741], (1975) 214 S.E.2d 832." Syllabus Point 2, *Bourne v. Mooney,* 163 W.Va. 144, 254 S.E.2d 819 (1979). Moreover, " ' "[w]here, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." Point 2, Syllabus, *French v. Sinkford,* 132 W.Va. 66 [54 S.E.2d 38].' Syllabus Point 6, *Earl T. Browder, Inc. v. County Court,* 145 W.Va. 696, 116 S.E.2d 867 (1960)." Syllabus Point 2, *Rhodes v. National Homes Corp.,* 163 W.Va. 669, 263 S.E.2d 84 (1979). Furthermore, "[i]n an action for personal injuries, the damages are unliquidated and indeterminate in character, and the assessment of such damages is the peculiar and exclusive province of the jury." Syllabus Point 3, *Yuncke v. Welker,* 128 W.Va. 299, 36 S.E.2d 410 (1945). This holding is explained by the following statement:

It is a general rule that where damages are indeterminate, mere difference of opinion between the court and the jury as to what the verdict should be, will not justify the court in disturbing the verdict. To warrant such action the verdict must evince passion, prejudice, partiality, or corruption upon the part of the jury.

*Id.,* 128 W.Va. at 309, 36 S.E.2d at 415 (citations omitted). This reasoning is contained in a syllabus point which states,

"In a case of indeterminate damages for which the law gives no specific rule of compensation, the decision of the jury upon the amount of damages is generally conclusive, unless the amount is so large or small as to induce belief that they were influenced by passion, partiality, corruption or prejudice or misled by some mistaken view of the case." *Holt v. Elevator Co.,* 78 W.Va. 785, 90 S.E. 333, L.R.A. 1917A,1194.

Syllabus Point 5, *Floyd v. Chesapeake & O. Ry. Co.,* 112 W.Va. 66, 164 S.E. 28 (1932).

In the case *sub judice,* the jury considered and weighed the conflicting evidence which was presented at trial. Dr. Padmanaban testified that he believed the appellee could have suffered a neck and back strain from the accident; however, he stated there was no objective evidence upon which to base this belief, just the subjective complaints of the appellee. Dr. Bachwitt testified that he did not believe the appellee's neck and back could have been injured from such a slight impact. Dr. Depkin testified regarding the effect the impact an accident such as this would have on the occupants of the Oldsmobile; that is, the type of acceleration people experience when rising from a sitting position. Dr. Depkin also stated that in numerous test accidents similar to this accident, none of the participants experienced strain or sprain or complained of injury. The disputed question in this case was not, as the circuit court supposed, the amount of damages the appellee should be awarded. Rather, the issue was whether the appellee was injured at all as a result of the accident. Apparently no expert proved to the satisfaction of the jury that the appellee sustained an injury for which she deserved to be compensated. The judge cannot substitute his opinion for that of the jury merely because he disagrees.

 Under the evidence presented at trial, the jury could have found for either party. This Court has previously said, "A jury's verdict is accorded great deference when it involves the jury weighing conflicting evidence[.]" *McNeely v. Frich,* 187 W.Va. 26, 29, 415 S.E.2d 267, 270 (1992) (per curiam). Furthermore,

"When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." Point 4, Syllabus, *Laslo v. Griffith*, 143 W.Va. 469, 102 S.E.2d 894.

Syllabus Point 2, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963).

▮▮▮▮ In other words, "To weigh the evidence and to resolve questions of fact when the oral testimony of witnesses regarding them is conflicting is peculiarly the province of the jury and should not be disturbed by the court." *Yuncke*, 128 W.Va. at 305, 36 S.E.2d at 413 (citations omitted). "When the verdict of a jury is in proper form, is duly signed by its foreman, and represents the final agreement of the jury, it should be received and entered by the trial court." *State ex rel. Rufus v. Easley*, 129 W.Va. 410, 415, 40 S.E.2d 827, 831 (1946) (citations omitted), *overruled on other grounds, State ex rel. Toryak v. Spagnuolo*, 170 W.Va. 234, 292 S.E.2d 654 (1982). In the case at bar, the jury apparently believed the appellant's experts, and, by their verdict, necessarily found that the appellee was not injured. The jury obviously felt strongly about their decision. They weighed the conflicting evidence and resolved the question as to whether or not the appellee had been injured by awarding $0 in damages. The judge refused to accept the verdict and sent them back to the jury room, instructing them the verdict was unacceptable. When they returned to the courtroom a second time, they reiterated their feelings by awarding a minimal amount of $53.00 in medicals and $0 in pain and suffering. The judge continued to ignore the feelings of the jury and sent them back to the jury room two more times with instructions to award more money. We sum up this part of our discussion by favorably quoting the Supreme Court of Appeals of Virginia:

If there is a conflict in the testimony on a material point, or if reasonable men may differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury. The weight of a jury's verdict, when there is credible evidence upon which it can be based, is not overborne by the trial judge's disapproval.

*Commonwealth v. McNeely*, 204 Va. 218, 222, 129 S.E.2d 687, 690 (1963).

This case involved conflicting testimony from which reasonable people could have differed in the conclusions of fact they drew from the evidence and it had been fairly tried under proper instructions. The original verdict was regular in form and was signed by the foreman and represented the final agreement of the jury. Therefore, the verdict of the jury should not have been set aside unless the judge determined the verdict was plainly contrary to the evidence or had no evidence to support it. The judge made no such finding. The record submitted on appeal is devoid of any indication that the judge believed the jury's original verdict "evince[d] passion, prejudice, partiality, or corruption upon the part of the jury" or was plainly wrong. Apparently the judge simply disagreed with the jury's opinion and, as a result, refused to accept their verdict. Instead, he substituted his conclusion for that of the jury.

▮▮▮▮ Also, the evidence presented in this case must be viewed in the light most favorable to the appellant (defendant below). This Court has previously said, "In an appeal from an allegedly inadequate damage award, the evidence concerning damages is to be viewed most strongly in favor of the defendant." Syllabus Point 1, *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983). Moreover,

In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

Syllabus Point 3, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963). When considering the evidence most strongly in favor of the appellant, we believe the jury properly found the appellee was not injured as a result of this accident. This reasonable and legitimate inference can fairly arise from the evidence presented and therefore must be assumed as true. We reiterate that

" 'In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.' Syl. pt. 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984)." Syl. Pt. 6, *McClung v. Marion County Comm'n*, 178 W.Va. 444, 360 S.E.2d 221 (1987).

Syllabus Point 2, *Tanner v. Rite Aid of West Virginia, Inc.*, 194 W.Va. 643, 461 S.E.2d 149 (1995).

■ We are aware that " '[w]here a verdict does not include elements of damage which are specifically proved in *uncontroverted* amounts and a substantial amount as compensation for injuries and the consequent pain and suffering, the verdict is inadequate and will be set aside. *Hall v. Groves*, 151 W.Va. 449, 153 S.E.2d 165 (1967).' *King v. Bittinger*, 160 W.Va. 129, 231 S.E.2d 239, 243 (1976)." Syllabus Point 3, *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983) (emphasis added). The key word is "uncontroverted," which means "incontroverted," Webster's Third New International Dictionary 2486 (1970), which means "not open to question: indisputable, certain." *Id.* at 1145.

In the case of *Hewett v. Frye*, 184 W.Va. 477, 401 S.E.2d 222 (1990) (per curiam), part of the damages were uncontroverted and part of the damages were controverted. In that case, Charles Hewett was injured in an automobile accident when his automobile was struck by a vehicle driven by Curtis Frye. Liability was admitted and the trial proceeded exclusively on the issue of damages. At trial, Hewett introduced evidence that he sustained the loss of eight teeth, a broken foot, broken toes, muscle damage in his lower legs, and various back and neck injuries. He presented medicals of $16,940.00 of which $4,234.00 in chiropractic expenses and $770.00 in expenses related to psychological treatment was controverted as being unrelated to the accident. Thus, only $11,936.00 in medical damages was proved by uncontroverted evidence. The jury awarded $11,712.93, approximately $223.00 less than the amount presented as uncontroverted medical damages. Hewett appealed the award to this Court, claiming the verdict was inadequate. This Court reasoned that

In *Kaiser*, we encountered a situation similar to the one presented in this case. Special damages had been contested by the appellees in *Kaiser* on the ground that there was no substantial causal relationship between the appellee's negligence and the injury allegedly sustained. We stated that resolution of such contested issues was within the province of the jury, and that the "judgments brought by the jury evidently represented their resolution of this conflict." *Kaiser*, 318 S.E.2d at 599.

*Id.*, 184 W.Va. at 479, 401 S.E.2d at 224. This Court upheld the jury verdict by stating:

Viewed most strongly in favor of the appellee, the evidence permits a conclusion by the jury that the appellant's psychological and mental disturbances were not causally related to the accident.... Consequently, we cannot conclude that the jury's failure to award damages for mental anguish renders the verdict inadequate as a matter of law.

*Id.*, 184 W.Va. at 480, 401 S.E.2d at 225.

Another case with similarities to the case at bar is *Haight v. Goin*, 176 W.Va. 562, 346 S.E.2d 353 (1986) (per curiam). At first glance, it appears to be directly on point. *Haight* involved a two-car accident. Benjamin Hardman was a passenger in Rosalie Haight's vehicle. At trial, the jury found the two drivers were equally negligent and

Hardman was not negligent. Nevertheless, no damages were awarded to Hardman. The judge accepted the verdicts on liability but sent the jury back twice to continue deliberating for the purpose of awarding damages to Hardman. That is where the similarities end. There was no question Hardman was injured in the accident and, prior to trial, the parties had stipulated to the amount of his medical bills.

■ In the case presently before us, the evidence as to whether or not Toler was injured at all in the accident is strongly controverted and there were no stipulations. Damages were contested by the appellant's presentation of evidence in the form of testimony of an orthopedic surgeon and an accident reconstructionist who disputed whether the ailments complained of by the appellee were caused by the collision. Viewed most strongly in favor of the appellant, the evidence permits a conclusion by the jury that the appellee was not injured in this slight accident. Consequently, we cannot conclude the jury's failure to award damages renders the verdict inadequate as a matter of law.

■ This is not to say that the judge in a civil case can never send the jury back to the jury room to reconsider before accepting the verdict. This Court has stated:

A judge of any trial court has the power and the authority, and it is his duty, before discharging the jury, to correct any irregularity, eliminate any surplusage, or amend the form of a verdict of the jury upon the trial of any case, when such action is necessary or proper and does not change the substance, finding or effect of the verdict.

Syllabus Point 2, *Crawford v. Coiner,* 152 W.Va. 411, 163 S.E.2d 793 (1968). By way of example, we will discuss several cases where the trial court properly instructed the jury to return to the jury room to reconsider their verdict. We will differentiate each of these cases from the case at bar.

In *Brewer v. Appalachian Constructors, Inc.,* 138 W.Va. 437, 76 S.E.2d 916 (1953), John Brewer instituted an action against several defendants to recover damages for personal injures he received as the result of an explosion which occurred at Brock Mine. At the close of trial, the case was submitted to the jury who returned a split verdict in that the jury specified the amount certain defendants must pay. The plaintiff moved the court to require the jury to reconsider the verdict. The court instructed the jury that the verdict must be joint and several and informed the jury that they could not designate the amounts certain defendants must pay on the verdict. The jury returned a second verdict against the four defendants. On appeal, this Court determined the first verdict was not in proper form and the trial court did not err in rejecting it. It was held that "[w]here the jury returns a verdict which is so defective that a proper judgment cannot be rendered thereon, it is the duty of the trial court under proper instructions to require the jury to retire for the purpose of returning a proper verdict." Syllabus Point 3, *id.* In the case *sub judice,* the jury did not return a split verdict which was improper in form. In other words, the jury's original verdict was not a defective verdict.

In *Kuhn v. Cooper,* 141 W.Va. 33, 87 S.E.2d 531 (1955), a wife sued for alienation of affections. The jury returned a verdict against the defendant, Myrtle Cooper, which separated the punitive and compensatory damages even though no interrogatory had been given and there was no occasion for the rendition of a special verdict dividing the damages. The trial court refused to accept the verdict and sent the jury back to the jury room to further consider their verdict. The jury then returned a verdict of $12,500.00 for the plaintiff wife, which the court accepted. This Court found no error in the action of the trial court. In the case at bar, the jury did not improperly divide or fail to divide damages. The jury was asked to determine the amount of money the appellee deserved for medical damages and for pain and suffering, to which they simply replied, "$0."

In *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975), a minor child was injured in a gas explosion. Her parents sued the gas company, the City and two companies which were performing work on the street for the city at the time the gas main was struck. The jury verdict was silent as to the construction company and the asphalt

company and was deemed a verdict in favor of those companies. The jury assessed special damages in the amount of $16,545.00 against the gas company and the remaining damages were assessed against the City. The court instructed the jury that the verdict was inconsistent and returned the jury for further deliberation. The jury then returned a joint verdict against the gas company and the City. Along with numerous other assignments of error, the gas company appealed to this Court, asserting that the trial court had no legal right to resubmit the case to the jury after the first verdict. In Syllabus Point 17 of *Long, id.,* this Court held that "[a] verdict disproportionately allocating an award against joint tort-feasors is patently erroneous, and upon the return of such verdict, it then and there becomes the duty of the trial court to require the jury to return a proper verdict." In the case presently before the Court, the jury made no disproportionate allocation. In fact, the jury did not allocate any award between the two joint tortfeasors.

In *Carter v. Jones,* 145 W.Va. 98, 112 S.E.2d 705 (1960), a boundary line case, the jury returned a verdict in favor of the Carters, but added that the Carters must pay all court costs incident to the case. The Carters asked the court to receive the verdict but to strike the provision concerning costs. The court refused to accept the verdict and directed the jury to return to the jury room to further consider their verdict. After further consideration, the jury returned a verdict in favor of the Joneses. On appeal, this Court concluded the trial court committed no reversible error and held: .

> It is not reversible error for a trial court to refuse to accept a verdict, or to direct the jury to return to the jury room and consider further of their verdict, after the return of a verdict based on a condition which renders it of such doubtful meaning that a proper judgment can not be rendered thereon.

Syllabus Point 1, *Carter, id.* The original verdict returned by the jury in the case at bar was not confusing or doubtful; in fact, it was abundantly clear. The circuit court simply refused to accept it.

In *Fortner v. Napier,* 153 W.Va. 143, 168 S.E.2d 737 (1969), there was an accident between an automobile driven by William D. Fortner and a truck driven by Ronnie Dale Napier which was owned by Davis Wholesale Co., Inc. Mr. Fortner was killed. Mrs. Fortner instituted two actions, one as administratrix of the estate of William Fortner and one in her own right for injuries she received as a guest passenger. The actions were consolidated for trial. The jury returned a composite verdict. The court determined there should be three separate verdicts and asked first if the jury had granted Mrs. Fortner anything for her own injuries. The foreman answered that Mrs. Fortner had been granted wages and medical expenses in the amount of $5,000.00. The court then asked if the jury had awarded $10,000.00 for the death of Mr. Fortner, to which the foreman replied, "[T]hat is correct." The court then asked if the remaining $6,000.00 was for funeral, hospital and other expenses including earnings, to which the foreman replied, "That is right." The court asked the foreman to help fill in the verdict form and to sign at each separate part of the verdict. On appeal, this Court found no error

> in this action in view of the fact that each of the prepared verdicts was signed by the jury foreman, all of the members of the jury were asked if such was their verdict, all answered in the affirmative and, inasmuch as this procedure took place before the jury was discharged, particularly in view of the fact that counsel for the defendant made no objection to the procedure followed by the able trial judge.

*Id.,* 153 W.Va. at 151, 168 S.E.2d at 742. Obviously, the jury did not return a composite verdict in the case now before us.

▪ In the interest of judicial economy, circuit courts should make every effort to correct defective or faulty verdicts and, thereby, avoid costly and time consuming retrials. With this in mind, however, we caution circuit courts not to usurp the function of the jury where the evidence is conflicting or controverted. A circuit judge cannot refuse to accept a proper and regular verdict for a party and send the jury back to the jury room with instructions to return a

verdict for another party. That is essentially what happened in this case. If judges are permitted to do this simply because they disagree with the jury's verdict, we do not need juries. Since the first verdict returned by the jury in this case was a verdict for the defendant, in proper form, nondefective and comported with valid evidence adduced by the defendant, the judgment order of the circuit court is hereby reversed and the court is instructed to enter an order reinstating the original verdict returned by the jury.

## IV.

## A NEW TRIAL

The trial court granted a new trial on the issue of pain and suffering. We previously stated that we will not reverse a trial judge's decision to award a new trial unless the judge abuses his or her discretion. The judge based this order on the fourth jury verdict, believing that $100.00 for pain and suffering is inadequate if medical damages equal $2042.00. As the judge invaded the province of the jury in getting the medical damages award and we are reversing and reinstating the original jury verdict of $0, we find the trial court abused its discretion in making this decision. The April 27, 1998 order awarding a new trial on pain and suffering is hereby reversed.

However, we do not believe the parties should be foreclosed from seeking relief in the form of a new trial as to all of the issues previously litigated.[2] This Court has previously provided guidance to trial courts by stating,

"When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure*, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set

aside the verdict, even if supported by substantial evidence, and grant a new trial...." Syllabus Point 3, in part, *In re State Public Building Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994).

Syllabus Point 2, in part, *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995). If a new trial is granted, it will not be just on the issue of damages as the issue contested at trial was whether the appellee was injured in the accident and the jury resolved this question in favor of the appellant. Unlike other cases discussed previously in this opinion, the parties did not stipulate that the appellee was injured as a result of the accident nor did they stipulate to a specific amount of medical expenses. Each of these issues was a question of fact for the jury. Therefore, if a new trial is awarded, each of these issues must be relitigated. The parties will have ten days from receipt of this opinion in which to file a motion for a new trial. W.Va. R. Civ. P. 59(b). Or, within ten days, the court may, on its own, order a new trial for any reason that would justify granting a new trial on a party's motion. W.Va. R. Civ. P 59(d).

## V.

## CONCLUSION

We, therefore, reverse the judgment of the Circuit Court of Logan County and remand this case for entry of an order reinstating the original verdict. Thereafter, the court must consider whether the original verdict is against the clear weight of the evidence or is based on false evidence or will result in a miscarriage of justice and decide whether or not to vacate the jury's verdict and grant a new trial under Rule 59 of the West Virginia Rules of Civil Procedure.

Reversed and remanded with directions.

---

2. If the trial judge believed the jury's original verdict for the defendant was against the clear weight of the evidence or would result in a miscarriage of justice, the judge should have set the verdict aside and granted a new trial. The verdict was not defective; it was simply a verdict for the defendant.