668 S.E.2d 189

**Betty K. NEELY and Johnny L. Neely, Plaintiffs Below, Appellees,**

v.

**BELK INCORPORATED, Crown American Crossroads, LLC, d/b/a Crossroads Mall and Newport Trading Company, Inc., Defendants Below, Appellants.**

No. 33597.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 27, 2008.

Decided June 26, 2008.

564

Heather Heiskell Jones, Brian J. Warner, Spilman Thomas & Battle, PLLC, Charleston, for Appellant Belk Incorporated.

James C. Stebbins, Stebbins & Pinkerton, PLLC, Charleston, for Appellant Newport Trading Company.

Corey Palumbo, Bowles Rice McDavid Graff & Love, Charleston, for Appellant Crown American Crossroads d/b/a Crossroads Mall.

John D. Wooton, The Wooton Law Firm, Beckley, for Appellees.

BENJAMIN, J:

Appellants herein and defendants below, Belk Incorporated, Crown American Crossroads, LLC, d/b/a Crossroads Mall and Newport Trading Company Inc., seek reinstatement of a jury verdict rendered in their favor after an eight day trial in this personal injury action. Upon motion by the appellees, the Circuit Court of Raleigh County set aside the jury's verdict and ordered a new trial finding the original jury verdict was against the clear weight of evidence. Appellants argue the circuit court erred in making this finding. After a comprehensive review of the trial transcript, record below, pertinent legal authorities and arguments of the parties, we agree with the appellants. Accordingly, for the reasons set forth herein, the circuit court's January 2, 2007, order setting aside the jury's verdict and ordering a new trial is reversed and this matter is remanded with directions to promptly enter a judgment order consistent with the jury's verdict.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This personal injury action arises from an October 7, 2002, incident at the Belk Department Store [1] located at the Crossroads Mall [2] in Beckley, West Virginia, wherein appellee Betty Neely (hereinafter "Ms. Neely") was allegedly injured while opening the store's outer entrance door. The facts regarding what actually happened on October 7, 2002, was disputed at trial. According to Ms. Neely, the entrance door came completely off its hinges when she tried to open it, striking her as it fell to the ground. Ms. Neely maintains the door struck her right knee and side as it fell. Ms. Neely's daughter, Haley Clark, did not testify that she actually saw the door fall and strike her mother, although she did state she saw it on the ground. By contrast, two former Belk employees, Frankie Lawson and Avis Bailey, testified that the door did not come completely off its hinges and fall to the ground, but that it was still in its frame, attached at the top hinge and askew at the bottom, after the incident. These employees testified that after they assisted Ms. Neely, they removed the door from its frame and leaned it against the wall in the entryway. Ms. Lawson and Ms. Bailey were apparently the first Belk employees to see the door after the incident.

At trial, the case presented by the Neelys focused mainly on establishing damages and attempting to utilize circumstantial evidence to infer a problem existed with the door in order to establish liability. With respect to liability, the Neelys presented evidence that the door had previously been repaired due to problems with locking,[3] that an independent

---

1. This Belk Department Store was owned and operated by Appellant Belk, Incorporated (hereinafter interchangeably referred to as "Belk").

2. Crossroads Mall is owned and operated by appellant Crown American Crossroads, LLC, d/b/a Crossroads Mall (hereinafter interchangeably referred to as "Crossroads").

3. This evidence did *not* include what was actually done to the door to repair it other than replacement of some of the hardware. Appellees did not call the person who performed these repairs to testify as to the extent of the work he performed or why that work had been performed.

witness had seen the door off of its hinges at some unknown time and that none of the appellants[4] had a record of repairing the door after the incident in question. The Neelys' liability expert, Donald Lyons, did not inspect the door prior to forming his opinions and was unable to provide an opinion as to what actually happened to cause the door to come loose from its frame.[5] He gave several opinions as to what might have happened and admitted that he did not know which scenario was the more probable cause of the door malfunctioning. He likewise admitted that the door could have been functioning properly immediately prior to Ms. Neely's incident and came loose without any prior warning. The *only* thing that this expert testified to with the required degree of certainty was that the door fell. He did not offer an opinion to the requisite level of certainty as to why it fell.

At trial, Ms. Neely claimed to be totally and permanently disabled as a result of the injuries allegedly sustained in the October 7, 2002, incident. Specifically, she claimed to have developed reflex sympathetic dystrophy and complex regional pain syndrome in her right knee,[6] in addition to an inability to perform routine daily tasks and psychological injuries which kept her essentially homebound. Several persons, including Ms. Neely, her husband, appellee Johnny Neely and her daughter testified that Ms. Neely no longer enjoyed life, could no longer do household chores, cook, garden, walk without a limp or go shopping[7] and that they performed these tasks for her.[8] The Neelys presented testimony from Ms. Neely's treating physicians regarding her alleged injuries and the testimony of a life care planner itemizing more than $900,000 in projected future expenses.

To refute Ms. Neely's claims, the appellants utilized Ms. Neely's March 2002 social security disability application and surveillance video taken of her during the pendency of the instant litigation. In March 2002, more than six months prior to the Belk incident at issue herein, Ms. Neely applied for social security disability benefits claiming to be totally disabled due to depression, anxiety and panic attacks. This application, completed with the assistance of her daughter, indicated Ms. Neely was unable to do household chores, other than laundry, or drive. She indicated she had no hobbies or interests, no longer went shopping and did not leave the house other than to go to the doctor's office, her daughter's house or her mother's house. Ms. Neely later claimed these same effects resulted from the injuries she alleges to have sustained at Belk on October 7, 2002.[9]

The surveillance video depicts Ms. Neely on two separate days, one in November 2004 and the other in August 2005 walking without a limp[10] while shopping for an extended period of time, doing errands and dining out. It also depicts her balancing on her injured

4. Appellant Newport Trading Company, Inc. (hereinafter "Newport Trading") had replaced hardware on the door in question in September 2002. *See supra*, fn. 3. One theory of liability in this matter was that Newport Trading's repairs were inadequate or defective.

5. This expert did look at the door on the eve of trial when he happened upon the store. However, the circuit court precluded testimony regarding this "inspection" as it occurred four years after the incident and was not relied upon in forming his disclosed opinions in this matter. This witness offered various explanations for why the door may have fallen to the ground as Ms. Neely claimed. To explain the testimony of the Belk employees that the door was still erect and in its frame when they arrived on the scene, Dr. Lyons testified he assumed that a good Samaritan walked by, picked up the door and set it in the frame while the employees were tending to Ms. Neely.

6. Photographs of Ms. Neely's knee taken in the days after the October 7, 2002, incident indicate some bruising and swelling of the knee.

7. The testimony revealed that shopping was one of Ms. Neely's favorite activities which she did several times a week for hours at a time prior to the Belk incident.

8. Ms. Neely's son-in-law and her best friend/neighbor also testified regarding the affect they believe the incident has had on Ms. Neely's behavior.

9. At trial, Ms. Neely testified she could do all of these things prior to the incident at Belk.

10. The video does depict Ms. Neely walking with a limp when she was going into her therapist's office and entering the Division of Motor Vehicles to obtain a handicapped parking placard.

right leg while apparently searching for something in her purse. Ms. Neely explained the video depiction by stating she has good days and bad days and the video must have been taken on good days.

On November 3, 2006, the jury rendered a unanimous verdict against the Neelys finding that they did not sustain their burden of proving negligence. Accordingly, the circuit court entered a judgment order in favor of the appellants on November 8, 2006. The Neelys timely filed a Rule 59 [11] motion to set aside the verdict and award a new trial arguing that the verdict was contrary to the evidence, that the jury was misled and that substantial injustice would result if the verdict was upheld. Appellants responded to this motion by pointing out numerous mischaracterizations [12] of testimony set forth in the Neelys' motion and the contradictory evidence regarding liability and damages presented at trial. Appellants argued that it was in the sole province of the jury to weigh the evidence, make credibility judgments and resolve factual disputes. As such, the appellants argued that the jury's verdict should be upheld absent a showing of instructional or other prejudicial error. By order dated January 2, 2007, the circuit court granted the motion to set aside the jury's verdict and ordered a new trial finding the Neely's had set forth a prima facie case of negligence. This appeal follows.

## II.

### STANDARD OF REVIEW

This matter comes before us for review of the circuit court's decision to set aside a jury verdict and order a new trial on all issues. In syllabus point 3 of *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995), we found that

[w]hen a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure*, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

Although subjecting the trial court's decision to review for an abuse of discretion, we also noted in *In re State Public Building Asbestos Litigation* that a new trial should rarely be granted and then granted only where it is " 'reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done.' " *In re State Public Building Asbestos Litigation*, 193 W.Va. at 124, 454 S.E.2d at 418 (quoting 11 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2803 at 32–33); *see also, Morrison v. Sharma*, 200 W.Va. 192, 194, 488 S.E.2d 467, 470 (1997)(same). In *Maynard v. Adkins*, 193 W.Va. 456, 459–60, 457 S.E.2d 133, 136–7 (1995), we further explained that:

consistent with *Asbestos Litigation*, . . ., is the general principle that the judgment of a trial court in awarding a new trial should be reversed if it is "clearly wrong" or if a consideration of the evidence shows that the case was a proper one for jury determination. *Sargent v. Malcomb*, 150 W.Va. 393, 395, 146 S.E.2d 561, 563 (1966). As stated in syllabus point 4 of *Bronson v. Riffe*, 148 W.Va. 362, 135 S.E.2d 244 (1964): "Where the trial court improperly sets aside a verdict of a jury, such verdict

11. Rule 59(a) of the *West Virginia Rules of Civil Procedure* provides, in pertinent part, that a "new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law[.]"

12. Having reviewed both the Neely's motion and the trial transcript, we agree that the motion took liberties with its representations of trial testimony. We do note, however, that the motion was prepared and filed by trial counsel who withdrew from this matter shortly after the motion was filed and who was no longer involved in this matter at the time the motion was granted by the circuit court.

will be reinstated by this Court and judgment rendered thereon."

. . .

*First National Bank in Marlinton [v. Blackhurst,* 176 W.Va. 472, 345 S.E.2d 567 (1986)] in its "abuse of discretion" context, comports with *Asbestos Litigation* and generally with various earlier decisions of this Court concerning the awarding of a new trial. As syllabus point 7 of *Earl T. Browder Inc. v. Webster County Court,* 145 W.Va. 696, 116 S.E.2d 867 (1960), states: "The action of the trial court in setting aside a verdict for the plaintiff and awarding the defendant a new trial will be reversed by this Court where it appears that the case, as a whole, was fairly tried and no error prejudicial to the defendant was committed therein." *See also* syl. pt. 6, *Gault v. Monongahela Power,* 159 W.Va. 318, 223 S.E.2d 421 (1976); syl. pt. 6, *Western Auto Supply v. Dillard,* 153 W.Va. 678, 172 S.E.2d 388 (1970); syl. pt. 7, *Brace v. Salem Cold Storage,* 146 W.Va. 180, 118 S.E.2d 799 (1961); syl. pt. 2, *City of McMechen v. Fidelity and Casualty,* 145 W.Va. 660, 116 S.E.2d 388 (1960); syl., *Ward v. Raleigh County Park Board,* 143 W.Va. 931, 105 S.E.2d 881 (1958); syl. pt. 3, *Ware v. Hays,* 119 W.Va. 585, 195 S.E. 265 (1938).

Although *Gault* addressed specifically a defendant's motion for a new trial, we note that the same principle applies regardless of which party prevailed. We expounded on the premise that a new trial should not be awarded where the case had been fairly tried in *Tennant v. Marion Health Care Foundation,* 194 W.Va. 97, 106, 459 S.E.2d 374, 383 (1995), wherein we stated that:

unless error affected the outcome of the trial, a new trial should not usually be granted. In other words, when a trial court abuses its discretion and grants a new trial on an erroneous view of the law, a clearly erroneous assessment of the evidence, or on error that has no appreciable effect on the outcome, it is this Court's duty to reverse.

Accordingly, the action of the trial court in setting aside a verdict and awarding a new trial will be reversed by this Court where it appears that the case, as a whole, was fairly tried and no error prejudicial to the losing party was committed during the trial. With these principles in mind, we turn to the issues raised herein.

## III.

### DISCUSSION

The circuit court's decision to grant the Neely's motion for a new trial was based upon a finding that the jury's verdict was contrary to the clear weight of the evidence. In the memorandum accompanying its order granting the new trial, the circuit court stated that it had:

reviewed the evidence presented during the trial of this action. . . . It was not disputed at trial that that [sic] the door had fallen on the Plaintiff and no party offered any evidence to explain the cause of the fall.

It is the court's opinion that the Plaintiff presented a prima *facie* case [sic] against all defendants on the issues of duty, breach, proximate cause, and damages. . . .

It cannot be said that a door cannot fall except as the result of negligence, nor does the evidence of a falling door shift the burden of proof. It is the court's opinion, however, that the evidence produced at trial that a public door to a retail establishment fell on a patron constituted a *prima facie* case of negligence that places upon the defendants the duty to come forward with evidence to overcome the impact of the *prima facie* case. The strength of the *prima facie* case, largely unchallenged by any Defendant, is such that the court must conclude that the jury's verdict on the issue of liability is contrary to the clear weight of the evidence.

The jury's finding on liability may be explained by reference to the Plaintiff's evidence of damages. Plaintiff claimed a substantial amount of damages for a life care plan, with questionable medical support, and her claim was seriously weakened by her own contradictory acts and statements. In addition, Defendants offered a surveillance video upon which a

jury could conclude that she was exaggerating her symptoms when it was to her benefit to do so. . . .

It is the court's opinion that it is substantially likely that the jury's finding on liability is the result of their conclusion that the Plaintiff had exaggerated her damages claim, and that it is not supported by the evidence pertinent to liability. That opinion supports that finding that the jury's verdict was grounded on motivations which, although understandable, do not support the verdict.

On appeal, Appellants argue that the circuit court erred in setting aside the jury verdict where the appellees had failed to prove essential elements of their negligence claim, particularly foreseeability and damages, at trial. Additionally, appellants maintain that the circuit court abused its discretion by substituting its judgment for that of the jury. In response, appellees argue that the circuit court did not abuse its discretion in granting a new trial. They also, however, acknowledge that there was a factual dispute as to the degree to which the door fell and that there was no evidence produced to explain why the door fell. In essence, appellees argue that the appellants must be negligent because the door fell and there was no evidence of negligence on the part of Ms. Neely in opening the door.[13] Therefore, the only issue the jury should have decided was appropriate damages. We disagree.

This Court recently discussed the concept of negligence, including the essential element of foreseeability, at length in the case of *Strahin v. Cleavenger*, 216 W.Va. 175, 603 S.E.2d 197 (2004). Therein, this Court explained:

[a]n action in negligence is based in tort law and is brought to recover damages from a party whose acts or omissions constitute the proximate cause of a claimant's injury. *Sewell v. Gregory*, 179 W.Va. 585, 587, 371 S.E.2d 82, 84 (1988). To prevail in a negligence suit, the plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff. *Webb v. Brown & Williamson Tobacco Co.*, 121 W.Va. 115, 118, 2 S.E.2d 898, 899 (1939). Consequently, the threshold question in all actions in negligence is whether a duty was owed. As succinctly stated in syllabus point one, in part, of *Parsley v. General Motors Acceptance Corporation*, 167 W.Va. 866, 280 S.E.2d 703 (1981), "No action for negligence will lie without a duty broken."

*Strahin*, 216 W.Va. at 183, 603 S.E.2d at 205. Additionally, we recognized that:

[d]uty is not, however, an inflexible principle since "[i]t is not absolute, but is always relative to some circumstance of time, place, manner, or person." Syl. Pt. 1, in part, *Dicken v. Liverpool Salt & Coal Co.*, 41 W.Va. 511, 23 S.E. 582 (1895). Moreover, we have found that:

[t]he ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordi-

---

**13.** Though not articulating it as such, appellees appear to be invoking the doctrine of *res ipsa loquitur* to support their claim as they produced no evidence regarding what actually happened to the door, only possibilities of what may have occurred based upon their expert's presumptions and dismissal of contradictory evidence.

Pursuant to the evidentiary rule of *res ipsa loquitur*, it may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Syl. pt. 4, *Foster v. City of Keyser*, 202 W.Va. 1, 501 S.E.2d 165 (1997). To apply this doctrine, a plaintiff is required to demonstrate that circumstantial evidence will be presented that will permit the jury to make reasonable inferences and not be forced to speculate in order to reach its conclusion. Syl. pt. 4, *Kyle v. Dana Transport, Inc.*, 220 W.Va. 714, 649 S.E.2d 287 (2007). This doctrine may not "be invoked where the existence of negligence is wholly a matter of conjecture and the circumstances are not proved, but must themselves be presumed[.] . . . [It] applies only in cases where defendant's negligence is the only inference that can reasonably and legitimately drawn from the circumstances." Syl. pt. 5, in part, *Davidson's Inc. v. Scott*, 149 W.Va. 470, 140 S.E.2d 807 (1965).

nary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

Syl. Pt. 3, *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988).

*Strahin*, 216 W.Va. at 184, 603 S.E.2d at 206. Questions of duty, including foreseeability, are mixed questions of law and fact, with the trial court and jury serving separate, yet important roles. In *Strahin*, this Court described the distinct roles the judge and jury play when the facts concerning foreseeability are in dispute as follows:

> "[A] court's task—in determining "duty"—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.
>
> The jury, by contrast, considers "foreseeability" ... [in] more focused, "fact-specific settings.... [T]he jury may consider the likelihood or foreseeability of injury in determining whether, in fact, the particular defendant's conduct was negligent in the first place."

*Id.*, quoting, *Ballard v. Uribe*, 41 Cal.3d 564, 224 Cal.Rptr. 664, 715 P.2d 624, 628–29 n. 6 (1986) (emphasis in the original). Relating this description to our own law, we proceeded to explain:

> a court's overall purpose in its consideration of foreseeability in conjunction with the duty owed is to discern in general terms whether the type of conduct at issue is sufficiently likely to result in the kind of harm experienced based on the evidence presented. If the court determines that disputed facts related to foreseeability, viewed in the light most favorable to the plaintiff, are sufficient to support foreseeability, *resolution of the disputed facts is a jury question. The jury has the more specific job of considering the likelihood or foreseeability of the injury sustained under the particular facts of the case in order to decide whether the defendant was negligent in that his or her conduct fell within the scope of the duty defined by the court.* " ' " ' " "Questions of negligence ... present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syl. Pt. 1, *Ratlief v. Yokum*, [167 W.Va. 779], 280 S.E.2d 584 (W.Va.1981), quoting syl. Pt. 5, *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964).' Syllabus Point 6, *McAllister v. Weirton Hosp. Co.*, 173 W.Va. 75, 312 S.E.2d 738 (1983)." Syl. Pt. 17, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990).' Syl. Pt. 1, *Waugh v. Traxler*, 186 W.Va. 355, 412 S.E.2d 756 (1991)." Syl. Pt. 2, in part, *Johnson v. Mays*, 191 W.Va. 628, 447 S.E.2d 563 (1994); *see also* Syl. Pt. 3, in part, *Davis v. Sargent*, 138 W.Va. 861, 78 S.E.2d 217 (1953), Syl. Pt. 2, in part, *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963).

Essentially, the judge in cases such as the one before us has the responsibility of reviewing the evidence to see if it is sufficient for a jury to make a determination of whether or not it was foreseeable that the acts of the property owner or occupier could have under the facts of the case, disputed or not, created an unreasonable high risk of harm to the victim under the circumstances. *When the facts are in dispute, the court identifies the existence of the duty conditioned upon the jury's possible evidentiary finding.* Our review of the lower court's determination regarding the general finding of duty, as a matter of law, is reviewed de novo.

*Id.* (emphasis added); *see also* Syl. pts. 10, 12, *Id.*

Appellees' burden to establishing negligence does not change because the incident occurred in a public retail shopping establishment. Fairly characterized, Appellees' claims against Belk and Crossroads are founded upon a premise liability theory of recovery. We have previously held that:

> The owner or the occupant of a premise used for business purposes is not an insur-

er of the safety of an invited person present on such premises and, if such owner or occupant is not guilty of negligence or willful or wanton misconduct and no nuisance exists, he is not liable for injuries there sustained by such invited person. Syl. pt. 3, *Puffer v. The Hub Cigar Store, Inc.,* 140 W.Va. 327, 84 S.E.2d 145 (1954), *overruled on other grounds by Mallet v. Pickens,* 206 W.Va. 145, 522 S.E.2d 436 (1999). In syllabus point 6 of *Mallet v. Pickens,* 206 W.Va. 145, 522 S.E.2d 436 (1999), we set forth guidelines for the trier of fact to ascertain whether a premises liability defendant has breached its legal duty of care by holding that:

> [i]n determining whether a defendant in a premises liability case met his or her burden of reasonable care under the circumstances to all non-trespassing entrants, the trier of fact must consider (1) the foreseeability that an injury might occur; (2) the severity of the injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury."

The element of foreseeability is particularly crucial in premise liability cases because before an owner or occupier may be held liable for negligence, "he must have had actual or constructive knowledge of the defective condition which caused the injury." *Hawkins v. United States Sports Assoc., Inc.,* 219 W.Va. 275, 279, 633 S.E.2d 31, 35 (2006) (*per curiam* ).

 In overturning the jury's verdict in this matter and ordering a new trial based upon an insufficiency of evidence, the circuit court blurred the distinction between its own role and that of the jury in determining negligence. The circuit court's role was to make the legal determination as to whether the appellants, or any of them, owed Ms. Neely the legal duty to use reasonable care under the circumstances. *Strahin,* 216 W.Va. at 183, 603 S.E.2d at 205. Assuming such duty exists, the circuit court had the additional role of determining whether the Neelys had presented sufficient evidence to

raise the question of whether all or any of the appellants could have foreseen that the door in question could malfunction and injure a customer. *Id.* at 184, 603 S.E.2d at 206. Because the facts as to the extent of the door malfunction and its cause were in dispute, it was the sole role of the jury to determine whether the evidence presented demonstrated that the injury which occurred could have been foreseen by any or all of the appellants. *Id.,* 603 S.E.2d at 206. " ' "When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the evidence or without sufficient evidence to support it." Point 4, Syllabus, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894.' Syllabus Point 2, *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736 (1963)." Syl. pt. 5, *Toler v. Hager,* 205 W.Va. 468, 519 S.E.2d 166 (1999).

 Although the circuit court does have some role in determining whether there is sufficient evidence to support a jury's verdict, it is not the role of the circuit court to substitute its credibility judgments for those of the jury or to assume the jury made certain findings because they did not believe evidence presented on other issues. The circuit court's role in determining whether sufficient evidence exists to support a jury's verdict was set forth in syllabus point 5 of *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983), wherein we held:

> In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

The authority given to the circuit court to weigh evidence and consider credibility in syllabus point 3 of *In re State Public Building Asbestos Litigation,* "does not obviate the essential role of the jury in resolving

conflicting evidence and credibility issues." *Pauley v. Bays*, 200 W.Va. 459, 464, 490 S.E.2d 61, 66 (1997) *(per curiam)*. This Court has "consistently held that the function of the jury is to weigh the evidence with which it is presented and to arrive at a conclusion regarding damages and liability. As an element of that vital task, the jury must analyze the evidence and determine the credibility to be assigned to various components of that evidence." *Pauley*, 200 W.Va. at 464, 490 S.E.2d at 66. Likewise, we have invariably maintained that " ' "[i]t is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony is conflicting." Point 3, Syllabus, *Long v. City of Weirton*, [158] W. Va. [741], (1975) 214 S.E.2d 832.' Syllabus Point 2, *Bourne v. Mooney*, 163 W.Va. 144, 254 S.E.2d 819 (1979)." Syl. pt. 2, *Toler*, 205 W.Va. 468, 519 S.E.2d 166.

■ In the instant matter, the testimony regarding the extent of the door's malfunction conflicted. Ms. Neely and her daughter maintained that the door fell completely to the ground. Disputing this depiction was the testimony of two former Belk employees who each testified that the door was still in its frame and askew at the bottom when they saw it after Ms. Neely reported the incident to them. These Belk employees also testified that they removed the door from its frame and set it in the entryway after the incident. The opinion of the Neelys' sole liability expert was based in large part upon his own credibility determination in that he disregard the testimony of the former Belk employees that the door did not fall to the ground and instead formed his opinion upon the depiction of events provided by Ms. Neely and her daughter. The jury was able to witness each of these five persons testify and judge their credibility for themselves. If the jury found the testimony of Ms. Neely and her daughter to not be credible, it would be within the jury's province to also discount the credibility of the Neely's expert who based his opinion, in large part, on the credibility of their account of the event at issue. Instead of ceding to the jury's determination, the circuit court substituted its own.

The circuit court did not justify its award of a new trial based upon a finding of prejudicial error either in the admission of evidence or in the instructions provided to the jury. Rather, the circuit court found that the verdict was against the clear weight of the evidence as defendants had not adequately refuted the Neely's *prima facie* case of negligence and the jury's liability finding was grounded upon their disbelief of the damages claim. The crucial flaw in this finding by the circuit court is that in order to prove a *prima facie* case of negligence, the Neelys had the burden to establish that the damages claimed were *caused* by the Belk incident. An equally plausible view of the jury's verdict is that while they believed that Ms. Neely was struck, to some extent, by the door, she did not establish that the damages she claimed were *caused* have that contact. The circuit court itself admitted that the Neelys "claimed a substantial amount of damages for a life care plan, with questionable medical support, and her claim was seriously weakened by her own contradictory acts and statements." Additionally, the appellants demonstrated that, other than the bruising to her knee, the conditions and injuries which Ms. Neely alleges resulted from being struck by the door where included as the basis for her social security disability benefits application filed *more than six months before* the Belk incident. While it is true that the appellants did not produce their own liability expert at trial, the circuit court erred in finding that they did not offer evidence to contradict the Neelys' claim as ample evidence was elicited on cross examination of the Neelys' own witnesses.

■ A fair review of the trial transcript reveals that contradictory evidence was presented to the jury regarding foreseeability, causation and the extent to which the door fell. While the Neelys were able to establish that Belk had experienced problems with locking the door previously and that Newport Trading had made repairs to the door to remedy the locking problem, they did not present evidence as to how Belk, Crossroads or Newport Trading could have anticipated that the door would fall or that locking problems would indicate the possibility that the

door could fall on a customer. ' This Court has previously held that:

"In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true." Syllabus Point 3, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963).

Syl. Pt. 6, *Toler*, 205 W.Va. 468, 519 S.E.2d 166. Applying this standard, in conjunction with that set forth in syllabus point 5 of *Orr*, we must find that the circuit court abused its discretion in setting aside the jury verdict because the evidence was contradictory on all issues. Thus, the jury's verdict could not be against the clear weight of evidence. Resolving, as we must, all questions in favor of the parties for whom the verdict was returned, the jury's verdict may be explained by assuming that they found that the door did not fall completely to the ground, that the potential for the door to fall was not foreseeable to any appellant and/or that the door did not cause the injuries claimed by Ms. Neely. Given the unique and vital role a jury has in our system of justice, rarely should a circuit court set aside a jury's verdict and order a new trial based upon credibility determinations by the circuit court absent other prejudicial evidentiary or instructional error or a record completely void of any evidence which would support the jury's verdict.

## IV.

## CONCLUSION

The Circuit Court of Raleigh County erred by setting aside the jury's verdict and ordering a new trial in this personal injury action. The jury's verdict may be explained through its resolution of conflicting evidence at trial. As there was no other prejudicial evidentiary or instructional error claimed, the circuit court should not have substituted its judgment for that of the jury. Accordingly, the Circuit Court of Raleigh County's January 2, 2007, order is reversed and this matter is remanded with direction to promptly enter a judgment order in accordance with the jury's verdict.

Reversed and Remanded.

Justices STARCHER and ALBRIGHT dissent and reserve the right to file dissenting opinions.

ALBRIGHT, Justice, dissenting:

In reversing the learned trial judge's decision to grant a new trial in this case, the majority seeks to emasculate the standard of review that was carefully crafted by this Court to differentiate the standard by which we consider an appeal from a grant of a new trial from those cases in which the trial court refused to grant a new trial. *See* Syl. Pt. 3, *In re State Public Bldg. Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994). By ignoring the significance of that separate standard, the majority has thumbed its collective nose at the long-standing jurisprudence of this state which clearly evinces a strong preference for *not* overturning a trial judge's decision to grant a new trial.

The adoption of a distinct standard of review for those cases in which a new trial has been granted was compelled by the recognition that a trial judge is uniquely situated to assess the verdict as against all the evidence presented at trial. And, where a circuit court judge is convinced that "the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice," this Court expressly authorized that trial judge to "set aside the verdict, even if supported by substantial evidence, and grant a new trial." *Id.* at 122, 454 S.E.2d at 416, syl. pt. 3, in part. Or so I thought.

The ruling reached in this case suggests that a decision to grant a new trial will be reversed with more ease and less deference to the trial court's conclusion than the standard we adopted in the *Asbestos Litigation* decision presumably requires. Only when the trial court has clearly abused its discretion in granting a new trial is this Court supposed to even consider appellate review of those cases. In this case, the majority's determination that an abuse of discretion

occurred is simply an excuse for second-guessing the studied decision of the trial court judge who was undeniably in the best position to assess the verdict returned by the jury as against the evidence introduced at trial.

The basis for affording enhanced weight to a trial court's decision to grant a new trial emanates from the charge placed upon the trial judge to oversee not only the trial process but also the jury verdict:

A trial judge is not merely a referee but is vested with discretion in supervising verdicts and preventing miscarriages of justice, with the power and duty to set a jury verdict aside and award a new trial if it is plainly wrong even if it is supported by some of the evidence, and when a trial judge so acts, his decision, being in discharge of his power and duty to pass upon the weight of the evidence to that limited extent, *is entitled to peculiar weight and will not be disturbed on appeal unless clearly unwarranted.*

Syl. Pt. 1, *Cook v. Harris,* 159 W.Va. 641, 225 S.E.2d 676 (1976) (emphasis supplied). Consequently, a trial judge's determination that a new trial should be awarded based on one of the three grounds this Court identified for setting aside a jury verdict in *Asbestos Litigation*[1] is not to be taken lightly.

In this case, an experienced, well-respected trial judge engaged in the weighing of the evidence required by a motion for a new trial and reached the determination that the jury's verdict was against the clear weight of the evidence. Appellants attempt to discredit the trial court's weighing of the evidence primarily by taking issue with the trial court's statement in its ruling that "[i]t was not disputed at trial that the door had fallen on the Plaintiff and no party offered any evidence to explain the cause of the fall." Maintaining that the issue of whether the door came off its hinges and fell on Ms. Neely was in fact heavily disputed at trial, Appellants argue that this incorrect finding supports its position that the trial judge

erred in ruling that the verdict was against the clear weight of the evidence.

Rather than arguing that the door injury did not occur at all, the tack taken by Appellants at trial was to question the extent to which the door came off its hinges and to accordingly question the amount of damages sustained by Ms. Neely related to the incident. Assuming then that the jury was considering the degree to which the door came loose from its hinges and whether the Plaintiff suffered any resulting harm from that alleged disengagement, the trial judge may have inartfully selected the words by which he sought to express a lack of dispute at trial that the door in question somehow fell on or struck Ms. Neely. Clearly, there was evidence suggesting that an injury resulted when the door came loose in some fashion from its hinges and struck Ms. Neely on the leg. The store employees, after examining the leg of Ms. Neely immediately after the incident and espying both some redness and some swelling on one of her legs, encouraged her to seek medical treatment, which she did.

Having been in that unique position of hearing all the evidence adduced at trial and being witness to issues of credibility, the trial judge was convinced that the jury reacted to a possibly "exaggerat[ed]" presentation of damages by deciding not to award her *any* of the damages to which she might be entitled. As the trial judge observes in his order, "the correct result would be to reduce the damages to a level that the jury believed would fairly compensate the Plaintiff, but it would not be correct to find against the Plaintiff on the issue of liability because she presented a questionable case on damages." Having determined that the Plaintiff successfully put on a *prima facie* case of negligence, which the trial court noted was "largely unchallenged by any Defendant," the trial court came to the conclusion that the issue was one of damages and not liability.

In overturning the trial court's decision to grant a new trial the majority has wrongly engaged in a reweighing of the evidence. This is the very object which this Court has

---

**1.** Those three grounds arise when the verdict: (1) is against the clear weight of the evidence; (2) is based on false evidence; or (3) will result

in a miscarriage of justice. *See* Syl. Pt. 3, *Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413.

long sought to avoid by limiting the occasions in which a grant of a new trial should be overturned. Accordingly, I most respectfully dissent.

I am authorized to state that Justice Starcher joins in this dissenting opinion.