# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**PAUL C. HALL and CONNIE J. HALL,**
**Plaintiffs Below, Petitioners**

**v.) No. 24-ICA-151**   (Cir. Ct. Raleigh Cnty. Case No. CC-41-2018-C-192)

**JOHN LILLY, KERRIE LILLY, and**
**FAITH BUILDERS CONSTRUCTION, LLC,**
**Defendants Below, Respondents**

**FILED**
**March 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Paul C. Hall and Connie J. Hall (the "Halls") appeal two orders from the Circuit Court of Raleigh County. The first is a Judgment Order following a jury trial, which was entered on September 7, 2023, and the second is an order dated March 8, 2024, which denied the Halls' motion for a new trial. Respondents John Lilly and Kerrie Lilly (the "Lillys") and Faith Builders Construction, LLC ("FBC"), filed separate responses.[1] The Halls filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2010, the Lillys entered into a written contract with FBC to perform certain construction work for a home they were constructing ("FBC-Lilly contract"). Under the contract, FBC was to provide the foundation and insulated crawlspace, partial basement, floor system, walls with insulation and sheetrock, windows, roof, sundeck, plumbing, furnace/heat pump, and the electrical system. The FBC-Lilly contract also expressly stated that the Lillys were responsible for installing plumbing fixtures, electrical switches and outlets, and bringing sewer and water to the home. It is undisputed that the Lillys were aware that FBC was not contracted to perform all aspects of the home's construction and that certain construction-related activities would still need to be completed upon FBC's completion of its contractual obligations.

---

[1] The Halls are represented by J. Zak Ritchie, Esq., Carl W. Shaffer, Esq., and William D. Stover, Esq. The Lillys are represented by Scott Kaminski, Esq., and John J. Brewster, Esq. FBC is represented by Cy A. Hill, Jr., Esq.

1

Relevant to this case, the FBC-Lilly contract did not expressly mention the installation of foundation drains as part of FBC's contractual obligations regarding its construction of the home's foundation. It is undisputed that foundation drains were not installed during the original construction of the home. At trial, Ms. Lilly testified that FBC completed all the work it was contracted to perform, including the required foundation construction. Code inspectors inspected and approved every phase of construction, including the foundation. A certificate of occupancy was issued to the Lillys on February 14, 2011.

Approximately one to two years after FBC completed its work on the home, FBC's owner, Kenneth Shrewsbury, was contacted by the Lillys with complaints about water in the home's basement. In a demand letter dated August 6, 2012, the Lillys' then-counsel informed FBC about various issues with the home, including:

> The basement leaks and has leaked since the home was built. Pursuant to Paragraph One of the Contract, a crawl space with a partial basement was to be provided as the foundation for their home. Upon inspection by an independent contractor, the seepage drain that should have been installed to prevent leaking was not done at the time of construction.

On November 4, 2013, the Lillys executed a pre-suit settlement and release wherein they were paid $10,000 by FBC's insurer to settle their claims against FBC. Around this same time, Mr. Shrewsbury returned to the property and installed downspouts connected to corrugated pipe to move the water away from the house. At trial in the present case, Ms. Lilly offered the lay opinion that she believed the downspout installation was perimeter drainage for the home.

In April of 2016, the Halls purchased the home from the Lillys. The seller's disclosure statement completed by the Lillys does not contain a specific line item for disclosure of foundation drains. As a result, there was no listed disclosure regarding the drains. However, the Lillys marked "No" in response to a disclosure statement inquiry as to whether they had knowledge of any "past or present drainage or flood problems" which affected their property or adjacent properties.

Prior to their purchase, the Halls asked Mike Hamilton, a licensed plumber, to conduct a walkthrough of the home. Mr. Hamilton, who is also a family member to the Halls, does not hold other professional licenses and admitted during his deposition that he was not a qualified home inspector. According to Mr. Hamilton, he did a cosmetic walkthrough of the home, which took approximately twelve minutes. As part of his walkthrough, he indicated that he had no access to the crawlspace or attic and did not look at the home's roof. However, he stated the Lillys never denied him access to any area of the home and that he saw the areas of the home he wanted to see. According to Mr. Hamilton, he and Mr. Hall went into the home's basement and observed that the floor was

damp, and that the exterior basement door would not open. The Halls did not raise this as an issue with the Lillys and proceeded to close on the home.

Following the Halls' purchase, Mr. Hamilton testified that he helped them complete updates on the home for approximately one to one-and-a-half months. He indicated that it was at this time that issues were discovered in the attic with the home's rafters and bracing; however, there were no significant problems found within the home's crawlspace other than a low spot in a drain which he fixed.

In 2018, the Halls filed a negligence action against the Lillys and FBC. It was alleged that the Lillys negligently failed to disclose defects in the home of which they had knowledge. Foundation drainage issues were one of the named defects. The Halls further alleged that FBC's negligent construction of the home was the proximate cause of their damages, and that FBC breached the implied warranty of habitability.[2]

A jury trial was held between August 14, 2023, and August 22, 2023.[3] At trial, Mr. Shrewsbury testified that FBC did not contract to install foundation drains and it was not covered by the FBC-Lilly contract. He explained that it would not have been practical to install foundation drains at that stage of the home's construction because the Lillys still needed to construct the sidewalk, driveway, and have the lot graded for drainage. He testified that when FBC left the project after completing its obligations, there were trenches around the foundation for drains to be installed as part of final grading.

As part of his testimony, Mr. Shrewsbury was asked to review photos of the home which were taken at the time of the Halls' purchase. Mr. Shrewsbury indicated that based upon his forty years of experience as a general contractor, it was obvious from the photos that the home's lot had not been properly graded for water to drain away from the home, and that in his professional opinion, inadequate grading was most likely responsible for the drainage issues. He further indicated that the Lillys never questioned FBC about grading or the condition of the foundation. On this issue at trial, Ms. Lilly testified that her husband used a tractor to flatten the front yard after FBC completed its work, filling in the trenches. She also testified that she may have misunderstood which party was responsible for the foundation drains.

---

[2] The complaint is not part of the appendix. The claims alleged in the complaint have been gleaned from our review of the circuit court's March 8, 2024, order denying the Halls' motion for a new trial. Based upon the record, it appears that the complaint alleged defects related to the home's foundation drains and roof. However, the foundation drains are the only issue raised on appeal.

[3] According to the record, several witnesses testified at trial; however, the circuit court's order and the parties' arguments on appeal only focus on the testimonies and evidence mentioned in this decision.

3

The Halls called structural engineer John Sadowski as an expert witness. Mr. Sadowski indicated he was hired to perform a structural inspection of the home and visited the residence on July 12, 2017, and August 29, 2017. Regarding the foundation drains, he testified that those drains may be installed during later stages of construction and are normally installed as part of the final grading of the home's lot. He stated that the lot's improper grading was readily observable and was likely the source of the water intrusion. Mr. Sadowski testified that if he had conducted a pre-purchase home inspection for the Halls, he would have needed more than twelve minutes to diligently inspect the home.

At the close of the Halls' case in chief, the Lillys and FBC both moved for the entry of judgment as a matter of law regarding the claims against them. The circuit court denied the Lillys' motion and granted FBC's motion, in part. The circuit court dismissed the claims against FBC related to the foundation drains, finding that FBC did not have a contractual obligation to install the drains or to perform the grading of the property. The circuit court denied FBC's motion as to all other claims. The circuit court later denied the Lillys' and FBC's renewed motions for judgment as a matter of law.

As part of the jury charge, the circuit court instructed the jury as to the law regarding the duty of a seller to disclose. On that issue, the circuit court instructed the jury as follows:

> The plaintiffs as purchasers must prove fraud by clear and convincing evidence that the defendant sellers: 1) knew of a latent defect or condition which substantially affected the value or habitability of that property; 2) that the sellers did not disclose such defects; 3) that the purchaser[s] did not know of such defect; 4) such defect would not have been discovered by a reasonably diligent inspection by the purchasers; 5) that the purchasers relied on the sellers' disclosures when they purchased the property; and 6) the purchasers suffered damage due to their reliance on the sellers' disclosure which omitted latent defects to the property.

*Accord* Syl., *Thacker v. Tyree*, 171 W. Va. 110, 297 S.E.2d 885 (1982).[4]

---

[4] The parties agree that the court's instruction is consistent with the law established in *Thacker*, which held:

> Where a vendor is aware of defects or conditions which substantially affect the value or habitability of the property and the existence of which are unknown to the purchaser and would not be disclosed by a reasonably diligent inspection, then the vendor has a duty to disclose the same to the purchaser. His failure to disclose will give rise to a cause of action in favor of the purchaser.

*Id.*

4

Following deliberations, the jury returned a verdict in favor of the Lillys and FBC for each remaining cause of action.[5] Relevant to this appeal, the jury answered the following question regarding the Lillys in the negative:

> Do you find by clear and convincing evidence that John and Kerrie Lilly failed to disclose to the Halls latent defects of which they had knowledge that a reasonably diligent inspection would not have discovered?

The verdict form also included the following question to which the jury responded in the affirmative:

> Do you find by a preponderance of the evidence that Plaintiffs Paul and Connie Hall are at fault for failing to perform a reasonably diligent home inspection or failing to properly inspect the home for themselves?

The jury's verdict then awarded the Halls no damages and allocated 100% fault to them.

Thereafter, the Halls filed a post-trial motion for a new trial pursuant to Rule 59(a) of the West Virginia Rules of Civil Procedure. Their motion claimed that the circuit court erred by granting FBC judgment as a matter of law, and that the jury's verdict in favor of FBC and the Lillys was against the clear weight of the evidence. The circuit court heard the motion on February 6, 2024, and denied the same in an order entered on March 8, 2024.

With respect to the circuit court's entry of judgment as a matter of law for FBC on the foundation drainage claim, the March 8, 2024, order found no error in that prior ruling. It was determined that the drainage construction was not contemplated by the FBC-Lilly contract, and that the evidence at trial established that the Lillys were responsible for various parts of the home's construction, including foundation drainage. For those reasons, it was concluded that no reasonable jury could have found that FBC owed a duty to the Lillys to install the foundation drains.

Next, the order addressed the Halls' challenge to the jury's verdict. The circuit court found that the Halls disagreed with the jury's interpretation of the evidence and believed that the jury should have found that they had a reasonably diligent home inspection performed by Mr. Hamilton. According to the Halls, the logical conclusion from the evidence was that FBC negligently constructed the home and the Lillys concealed the home's known construction defects. Here, the circuit court rejected this argument,

---

[5] The Halls do not challenge any jury verdict as it relates to their claims against FBC. Instead, the Halls challenge the circuit court's entry of judgment as a matter of law in favor of FBC and the denial of their motion for a new trial as to their claims against the Lillys.

concluding that the jury heard testimony from several witnesses, the jury weighed and considered the testimony and evidence during its deliberations, and that the clear weight of the evidence supported the jury's verdict.

The March 8, 2024, order also addressed the Halls' contention that because they were under no legal duty to obtain a home inspection prior to purchase, the jury was improperly asked to determine whether the Halls failed to obtain a reasonably diligent home inspection. On this issue, the circuit court agreed with the Halls that they had no legal obligation to obtain a home inspection but noted that the Halls were conflating a duty with a right. Thus, while the Halls had no duty to obtain an inspection, they had a right to do so. Moreover, because the Halls maintained that they had a home inspection performed by Mr. Hamilton, the circuit court determined that it was appropriate for the jury to determine whether Mr. Hamilton performed a reasonably diligent home inspection. This appeal followed.

On appeal, the Halls raise two assignments of error which require the application of different standards of review. First, they challenge the circuit court's entry of judgment as a matter of law in favor of FBC regarding the foundation drains negligence claim. Concerning our standard of review on this issue, it has been held:

> The appellate standard of review for the granting of a motion for a [judgment as a matter of law] pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, [the] court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed. Syllabus Point 3, *Brannon v. Riffle,* 197 W.Va. 97, 475 S.E.2d 97 (1996).

Syl. Pt. 5, *Smith v. First Cmty. Bancshares, Inc.*, 212 W. Va. 809, 575 S.E.2d 419 (2002).

On this issue, the Halls argue that when the evidence is properly considered, it is obvious that the circuit court's entry of judgment as a matter of law was inappropriate, and their foundation drainage claim against FBC should have been considered by the jury. The Halls assert that FBC breached its duty of care in building the home by creating latent defects which were not discoverable through a reasonably diligent pre-purchase home inspection. They further contend that because the FBC-Lilly contract does not expressly state that FBC was not responsible for installing the foundation drains, a question of fact existed for the jury as to whether FBC was responsible for installing the drains. The Halls also generally contend that the circuit court erred by relying upon Mr. Shrewsbury's testimony when it interpreted the contract, the circuit court should have interpreted the contract differently, and the circuit court erred by failing to properly consider the

6

significance of the earlier insurance settlement between FBC and the Lillys. We are unpersuaded by the Halls' arguments on this issue.

When considering the evidence in a light most favorable to the Halls, we find no error in the circuit court's determination that judgment as a matter of law was appropriate. Here, there is no evidence to support the Halls' theory that FBC had the obligation to install the foundation drains. Instead, the evidence shows that the FBC-Lilly contract was silent on the issue; Mr. Shrewsbury testified that FBC was not responsible for installing the foundation drains; and Ms. Lilly acknowledged that she and her husband were responsible for completing parts of the home's construction themselves. Notably, Ms. Lilly did not dispute the accuracy of Mr. Shrewsbury's testimony regarding FBC's contractual obligations or contend that FBC failed to perform under the contract. Moreover, Mr. Sadowski offered the expert opinion that foundation drains can be completed at later stages of construction and do not have to be contemporaneously completed with the foundation. Indeed, the circuit court's entry of judgment as a matter of law on this issue is the only reasonable conclusion supported by the record and must be affirmed.

As their final assignment of error, the Halls assert that the circuit court erred when it denied their motion for a new trial against the Lillys. Here, we review the circuit court's ruling for an abuse of discretion. *Lunsford v. Shy*, 243 W. Va. 175, 181, 842 S.E.2d 728, 734 (2020) (citations omitted) ("[A]s a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard."); *In re State Pub. Bldg. Asbestos Litig.*, 193 W. Va. 119, 124, 454 S.E.2d 413, 418 (1994) (citations and quotations omitted) ("Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done. . . . Ultimately[,] the motion invokes the sound discretion of the trial court, and appellate review of its ruling is quite limited.").

Additionally,

> [i]n determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true. Syllabus Point 3, *Walker v. Monongahela Power Co.*, 147 W. Va. 825, 131 S.E.2d 736 (1963).

Syl. Pt. 6, *Toler v. Hager,* 205 W. Va. 468, 519 S.E.2d 166 (1999). Similarly, as explained in *Neely v. Belk, Inc.*, 222 W. Va. 560, 570, 668 S.E.2d 189, 199 (2008):

> Although the circuit court does have some role in determining whether there is sufficient evidence to support a jury's verdict, it is not the role of the circuit court to substitute its credibility judgments for those of the jury or to assume

the jury made certain findings because they did not believe evidence presented on other issues. The circuit court's role in determining whether sufficient evidence exists to support a jury's verdict was set forth in syllabus point 5 of *Orr v. Crowder,* 173 W. Va. 335, 315 S.E.2d 593 (1983), wherein we held:

> In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

*Neely* at 570, 668 S.E.2d at 199.

The Halls argue that the Lillys' knowledge that the home lacked foundation drains is undisputed and that they failed to disclose this defect and the prior insurance settlement when they completed their disclosure statement. According to the Halls, the circuit court failed to consider these undisputed facts and erroneously found that the dampness discovered in the basement was sufficient to alert the Halls to a potential drainage issue. The Halls maintain the dampness in the basement is a red herring and assert the case is a matter of structural defects which could not be discovered through reasonable diligence. In sum, the Halls maintain that the evidence is clearly against the jury's verdict and the circuit court erred by not granting a new trial. We find no merit in this argument.

We begin by noting that the Halls do not challenge the jury instructions or verdict form used at trial. Instead, the crux of the Halls' argument is that they do not agree with the jury's interpretation of the evidence and offer alternative opinions and legal conclusions as to what they believe the evidence showed at trial. While the Halls are dissatisfied with the outcome of the jury's verdict, we are mindful of the significant role of a jury. As explained by the Supreme Court of Appeals of West Virginia:

> [W]e have . . . consistently held that the function of the jury is to weigh the evidence with which it is presented and to arrive at a conclusion regarding damages and liability. As an element of that vital task, the jury must analyze the evidence and determine the credibility to be assigned to various components of that evidence. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 [ ] (1986), the United States Supreme Court explained that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . ." *Id.* at 255[.]

*Pauley v. Bays*, 200 W. Va. 459, 464, 490 S.E.2d 61, 66 (1997). "When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." Syl. Pt. 4, *Laslo v. Griffith*, 143 W. Va. 469, 102 S.E.2d 894 (1958).

In this case, the record shows that the jury was presented with considerable evidence to weigh during its deliberation. After considering the evidence in accordance with the circuit court's instructions, the jury found that the Lillys did not fail to disclose any defects in the home because the Halls could have discovered the alleged defects through a reasonably diligent home inspection which they chose not to have performed.[6] These determinations were clearly jury issues, and we see no evidence that the jury's verdict was "plainly contrary to the weight of the evidence or without sufficient evidence to support it." *Laslo* at 469, 102 S.E.2d at 894, syl. pt. 4. Equally, there is no evidence that "prejudicial error has crept into the record or that substantial justice has not been done[.]" *In re State Pub. Bldg. Asbestos Litig.*, at 124, 454 S.E.2d at 418. Instead, the record demonstrates that the jury properly weighed the evidence and arrived at its verdict. As such, the circuit court properly denied the Halls' motion for a new trial.

Accordingly, we find no error and affirm the circuit court's orders dated September 7, 2023, and March 8, 2024.

Affirmed.

**ISSUED:** March 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[6] We also agree with the circuit court that while the Halls had no legal obligation to obtain a home inspection, they did have a right to do so, and their decision to forgo a proper home inspection in this case did not heighten the Lillys' legal obligation to, as the circuit court instructed the jury, disclose "such defect[s] [that] would not have been discovered by a reasonably diligent inspection by the purchasers."

9