# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FMS Enterprise, Inc.,**
**Defendant Below, Petitioner**

**vs.)  No. 21-0645** (Randolph County 18-C-36 and 18-C-45)

**Rose Senior Care, LLC,**
**Plaintiff Below, Respondent**

## MEMORANDUM DECISION

Petitioner FMS Enterprise, Inc. ("FMS Enterprise"), by counsel Harry A. Smith III, appeals the July 15, 2021, order of the Circuit Court of Randolph County denying its motion for a new trial. Respondent Rose Senior Care, LLC ("Rose Senior Care"), by counsel Jason E. Wingfield, filed a response in support of the lower court's order. FMS Enterprise filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the trial court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2018, Rose Senior Care, along with three other plaintiffs—Lavender Fields Assisted Living, LLC ("Lavender Fields"), Judi Rose, and Brett McClain—filed a complaint against FMS, Inc. and Frank Santmyer. The complaint, commencing civil action number 18-C-36, alleged that Rose Senior Care is a holding company for Lavender Fields, which operates an assisted living facility in Beverly, West Virginia. According to the complaint, Judi Rose and Brett McClain were members of Lavender Fields, and Frank Santmyer was an incorporator and agent of FMS, Inc. The complaint alleged that, in September of 2016, Lavender Fields accepted a bid from FMS, Inc. to construct an addition on the assisted living facility. The complaint asserted that numerous delays and cost overruns frustrated the project and that, as a result, the plaintiffs had suffered damages. In the complaint, the plaintiffs asserted claims of breach of contract, unjust enrichment, and negligence.

In May of 2018, FMS Enterprise filed its own complaint, commencing civil action number 18-C-45. FMS Enterprise named multiple defendants in the complaint, including Rose Senior Care and Lavender Fields. The complaint claimed that Rose Senior Care and Lavender Fields owed FMS Enterprise $40,861.15, plus interest, in connection with the construction project at the

assisted living facility. FMS Enterprise's complaint asserted that it had filed a timely mechanic's lien to secure payment of the alleged debt.

The two civil actions were consolidated. Thereafter, Rose Senior Care, along with Lavender Fields, Judi Rose, and Brett McClain, filed an amended complaint naming FMS Enterprise as a defendant. The amended complaint asserted the same claims against FMS Enterprise as were asserted against the defendants in the original complaint. FMS, Inc.—the corporate defendant named in the original complaint—was subsequently dismissed from the consolidated action.

The consolidated action proceeded to a two-day jury trial beginning on August 27, 2020, on the claims of Rose Senior Care against FMS Enterprise and the claim of FMS Enterprise against Rose Senior Care.[1] Rose Senior Care presented the testimony of five witnesses, including Judi Rose, Brett McClain, and Daniel McClain.[2]

Through their testimony, Judi Rose and Brett McClain asserted that they had several meetings with Frank Santmyer before agreeing that FMS Enterprise would construct a turnkey addition to the assisted living facility for $198,300. The agreement was not reduced to writing; however, Judi Rose acknowledged receiving an $84,000 written estimate for labor costs from FMS Enterprise. Judi Rose and Brett McClain both indicated that while Frank Santmyer estimated that the project would take four to five months to complete, work on the project began in November of 2016 and continued for over a year. Judi Rose and Brett McClain testified as to their concerns with FMS Enterprise's execution of the project. They stated that FMS Enterprise's workers regularly did not show up to the job; that when the workers did show up, they wasted time on the job; that the workers made numerous mistakes that needed to be corrected; that FMS Enterprise overcharged Rose Senior Care for materials and labor; and that FMS Enterprise did not finish the project.

Judi Rose and Brett McClain testified that Brett McClain and other workers he personally hired completed the project. Brett McClain averred that, after Rose Senior Care paid FMS Enterprise approximately $124,000 in labor costs, Rose Senior Care stopped paying FMS Enterprise. Thereafter, according to Brett McClain, the completion of the project cost Rose Senior Care a total of $52,202.06, $30,000 of which was paid to Elkins Builders Supply for materials and $22,202.06 of which was paid to other individuals in labor costs. Both Judi Rose and Brett McClain stated that, in total, Rose Senior Care paid over $400,000 for the addition, acknowledging that change orders were made during the construction process. Specifically, the original project plan was revised to add a basement, a firewall, a patio, and ramps. Brett McClain testified that a reasonable cost for the project would have been $198,300 plus a reasonable rate for the change orders. He estimated that, with the change orders, the total cost of the project should have been $250,000. He expressed his opinion that FMS Enterprise should be required to reimburse Rose

---

[1] The appendix record does not indicate why the claims of Lavender Fields, Judi Rose, or Brett McClain were not presented at trial or why the claims of Rose Senior Care against Frank Santmyer were not presented at trial.

[2] Although Brett McClain and Daniel McClain have the same surname, they are not related.

Senior Care $150,000. Brett McClain denied owing money to FMS Enterprise.

Judi Rose testified that the construction delays caused Rose Senior Care to suffer financial distress, annoyance, and inconvenience. She told the jury that Rose Senior Care's financial distress prevented her from expanding the business, buying a new home, buying a new car, giving employees raises or bonuses, and retaining employees. Brett McClain also expressed his belief that Rose Senior Care should be compensated for annoyance and inconvenience.

The trial court qualified Daniel McClain as an expert "in the field of construction contractor." Daniel McClain testified that the quality of FMS Enterprise's work was "slightly below average" and that, in completing the work, FMS Enterprise had deviated from industry standards. He further testified that FMS Enterprise's paperwork was insufficient, noting the lack of a written contract for the construction of the addition. According to Daniel McClain, Rose Senior Care overpaid FMS Enterprise in labor costs. Daniel McClain stated that rather than being entitled to $162,000 for labor costs (an amount representing, approximately, the total paid to FMS Enterprise for labor costs plus the amount FMS Enterprise claimed was still owed in labor costs), FMS Enterprise should only be entitled to between $60,000 and $65,000 in labor costs. Daniel McClain further testified that the project could have been completed in under four months, that FMS Enterprise should have to bear the cost of fixing mistakes, and that $5,000 to $10,000 would have been a reasonable cost for remedying aesthetic issues. He estimated that the construction of the addition could have been completed at a total cost of $187,000, excluding the cost of change orders. Including the cost of the change orders, which he estimated should have cost $39,345.00, Daniel McClain calculated that the total cost of the addition should have been $224,000.

FMS Enterprise presented the testimony of three witnesses, including Frank Santmyer. Regarding construction of the addition, Frank Santmyer testified that he agreed that FMS Enterprise would provide labor for the project at an hourly rate. He testified that FMS Enterprise had been paid a total of $124,010 by Rose Senior Care and that additional unpaid invoices totaled $38,400. He further testified that weather and deer season caused delays in construction.

The case was submitted to the jury on the second day of the trial, August 28, 2020. The jury completed the verdict form as follows:

> As to the claim of Rose Senior Care, LLC, against FMS Enterprises, Inc. [sic],
> > We, the jury, find as follows:
> > _X_ A. For Rose Senior Care, LLC, and assess damages in the amount of $200,000.00,
> > ___ B. For FMS Enterprises, Inc. [sic]
> As to the claim of FMS Enterprises, Inc. [sic] against Rose Senior Care, LLC:
> > We, the jury, find as follows:
> > ___ A. For FMS Enterprises, Inc. [sic], and assess damages in the amount of _____,
> > ___ B. For Rose Senior Care, LLC.

Due to the jury's failure to indicate their verdict regarding the claim of FMS Enterprise against Rose Senior Care, the trial court questioned the jury regarding the omission. The jury indicated

that, as to the claim of FMS Enterprise against Rose Senior Care, it had found for Rose Senior Care. The trial court entered an order on October 20, 2020, ordering that judgment be entered in favor of Rose Senior Care and against FMS Enterprise and that the mechanic's lien be set aside and annulled.

FMS Enterprise filed a motion for a new trial pursuant to Rule 59(a) of the West Virginia Rules of Civil Procedure[3] on October 30, 2020. In the motion, FMS Enterprise argued that the verdict in favor of Rose Senior Care was "against the clear weight of the evidence and results in a miscarriage of justice." During the hearing on the motion, the trial court said:

> [T]he jury heard two days of testimony. They considered that evidence. They . . . weighed the credibility of the witnesses, the exhibits that were presented, and they deliberated, reached -- reached a verdict they thought was appropriate based on the instructions provided to them in the verdict form that they were given.
>
> Um the -- the [c]ourt does have the authority to set aside a jury verdict. But, um, that -- that power, discretion to do that is to very seldomly be used and only in extreme cases. Based upon the testimony that was presented, the witnesses, the information, and the exhibits, there was a wide range of information provided from the defendant as opposed to what the plaintiff had. And I think the jury has considered the evidence and made -- and made and reached a unanimous verdict among them that they believe is fair and appropriate based upon all of that.
>
> So I'm going to deny the motion for a new trial. I think the manner that the case was presented to the jury, the deliberations were made -- I think they were satisfied with the verdict. Um, and I am satisfied that they have reached a verdict that they believe is appropriate. I am not going to step into their shoes and replace my judgment for theirs. And I am going to let the verdict as rendered stand.

The trial court entered an order denying the motion for a new trial on July 15, 2021, stating therein, "After reviewing the documents filed by counsel, hearing the arguments and representations of counsel and mature consideration of the testimony and evidence provided at trial, this [c]ourt, for the reasons more thoroughly stated on the record, FINDS that the verdict rendered was proper."

FMS Enterprise now appeals the trial court's July 15, 2021, order. In its one assignment of error, it argues that because the verdict was not supported by sufficient evidence, the trial court

---

[3] Rule 59(a) of the West Virginia Rules of Civil Procedure provides, in relevant part:

> *Grounds.* — A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law[.]

erred by denying its motion for a new trial.[4] FMS Enterprise asks this Court to reverse the trial court's order and remand the case to the trial court for a new trial.

This Court applies a two-pronged deferential standard of review in reviewing the denial of a motion for a new trial made pursuant to Rule 59 of the West Virginia Rules of Civil Procedure:

> We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*McClure Mgmt., LLC v. Taylor*, 243 W. Va. 604, 614-15, 849 S.E.2d 604, 614-15 (2020) (quoting *Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 104, 459 S.E.2d 374, 381 (1995)).

---

[4] The appendix record, which was prepared by FMS Enterprise, does not contain the entire trial transcript. In the portions provided, there is no indication that, before the case was submitted to the jury, FMS Enterprise made a motion for judgment as a matter of law pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure on the ground that Rose Senior Care's evidence was insufficient to sustain a verdict in its favor. There is no indication elsewhere in the appendix record indicating that FMS Enterprise made a Rule 50(a) motion during the trial.

This Court has held:

> Under the WEST VIRGINIA RULES OF CIVIL PROCEDURE [1998], when a party has failed during a jury trial to make a motion for judgment as a matter of law under Rule 50(a) challenging the sufficiency of the evidence, that party has waived the right to mount any post-trial attack on the sufficiency of the evidence under Rule 50(b). Additionally, if the party moves for a new trial under Rule 59 and attempts to challenge the sufficiency of the evidence supporting the verdict, then the scope of review of the motion is confined to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, and which, if not addressed by the court, would result in a manifest miscarriage of justice.

Syl. Pt. 5, *McInarnay v. Hall*, 241 W. Va. 93, 818 S.E.2d 919 (2018).

Under *McInarnay*, when a petitioner on appeal argues that, under Rule 59, it is entitled to a new trial based on the sufficiency of the evidence but has failed to make the appropriate Rule 50(a) motion during trial, the burden on that petitioner is greater than if the Rule 50(a) motion had been made. Thus, if FMS Enterprise did not make a Rule 50(a) motion during the trial, the burden on appeal would be greater than if the motion had been made. The appendix record is unclear as to whether FMS Enterprise made a Rule 50(a) motion during the trial, and Rose Senior Care does not argue that our review of FMS Enterprise's appeal should be limited by our holding in *McInarnay*. Therefore, we examine FMS Enterprise's assignment of error with the assumption that a Rule 50(a) motion was made at trial. As set forth in greater detail herein, because FMS Enterprise cannot prevail under this less-demanding review, FMS Enterprise's appeal would necessarily fail if a Rule 50(a) motion had not been made.

"Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. Pt. 4, *Sanders v. Georgia-Pacific Corp.*, 159 W. Va. 621, 225 S.E.2d 218 (1976).

Syl. Pt. 1, *Jordan v. Jenkins*, 245 W. Va. 532, 859 S.E.2d 700 (2021).

In support of its position that the motion for a new trial should have been granted, FMS Enterprise states that Rose Senior Care's evidence

was that it paid out a total of $146,010 in labor costs ($124,010, paid to [FMS Enterprise], plus $22,000 additional undocumented labor), labor costs that should have totaled, according to [Rose Senior Care]'s expert, $139,911 (the expert's $123,000 labor opinion, plus an additional agreed-upon $16,911 for a patio),[5] a difference of $6,099.

(footnote added). FMS Enterprise argues that, when viewing the evidence in favor of Rose Senior Care, "[t]he jury's verdict then could not have exceeded, at best, $6,099, plus a complete rejection of [FMS Enterprise]'s mechanic's lien claim, unless the jury rendered the bulk of its verdict based upon claims of annoyance and inconvenience, but the evidence to support that theory was totally unconvincing and insufficient." FMS Enterprise also claims that the trial court abdicated its judicial responsibility by simply adopting the jury's verdict and that the denial of the motion for a new trial resulted in a miscarriage of justice.

We begin our analysis of FMS Enterprise's argument by observing that

Although the circuit court does have some role in determining whether there is sufficient evidence to support a jury's verdict, it is not the role of the circuit court to substitute its credibility judgments for those of the jury or to assume the jury made certain findings because they did not believe evidence presented on other issues. The circuit court's role in determining whether sufficient evidence exists to support a jury's verdict was set forth in syllabus point 5 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983)[.]

---

[5] It appears that FMS Enterprise calculated the $123,000 figure by adding (1) the $84,000 estimate for labor costs that FMS provided to Judi Rose to (2) Daniel McClain's estimated cost of the change orders, which FMS Enterprise represents in its brief was $39,000. Although FMS Enterprise argues in its brief that Daniel McClain "testified that [FMS Enterprise] could have completed its labor for $123,000," the appendix record belies this assertion. Daniel McClain did not testify that the labor costs before the change orders should have been $84,000, nor did he testify that $39,000 reflected the appropriate labor costs for the change orders. Likewise, although FMS Enterprise's brief states, "[N]or was the expert aware that the parties had agreed that the additional $16,911 was appropriate for construction of a patio that had not been previously contemplated by the parties," Daniel McClain never acknowledged that $16,911 was a fair charge for the patio.

*Neely v. Belk Inc.*, 222 W. Va. 560, 570, 668 S.E.2d 189, 199 (2008). In Syllabus Point 5 of *Orr* we held:

> In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

*Id.* We have further held:

> "'In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.' Syl. pt. 3, *Walker v. Monongahela Power Co.*, 147 W. Va. 825, 131 S.E.2d 736 (1963)." Syllabus point 4, *Harnish v. Corra*, 237 W. Va. 609, 788 S.E.2d 750 (2016).

Syl. Pt. 9, *Belcher v. Dynamic Energy, Inc.*, 240 W. Va. 391, 813 S.E.2d 44 (2018).

Applying *Orr* to this case, we find that the evidence most favorable to Rose Senior Care was the testimony of its witnesses. Those witnesses testified that FMS Enterprise agreed to construct a turnkey addition onto the assisted living facility for $198,300. Based on this testimony, the jury could have found these witnesses credible and fairly concluded that FMS Enterprise agreed to construct the addition for $198,300, including labor and materials. Rose Senior Care's witnesses further testified that the total cost of the project, after change orders and including the cost of labor and materials, was approximately $400,000. Given that this amount was not in dispute at trial, the jury likely found this testimony credible. Although FMS Enterprise claims that the evidence could justify a verdict of no more than $6,099, we disagree. Daniel McClain, an expert in construction, testified that labor and materials for the project, with change orders, should have cost a total of $224,000. He also testified that an additional $5,000 to $10,000 was necessary for Rose Senior Care to remedy aesthetic issues arising from FMS Enterprise's work, such as repairing drywall, molding, and trim that was not cut properly. Assuming the jury found this testimony credible, the jury could have found that FMS Enterprise caused Rose Senior Care to incur $186,000 in unwarranted expenses. Thus, giving Rose Senior Care's evidence every reasonable and legitimate inference, and assuming the jury accepted Daniel McClain's testimony as true, we determine that sufficient evidence was presented to establish that $186,000 of the jury's $200,000 verdict could have consisted of compensation for the unjustified expenses incurred by Rose Senior

Care.[6] It follows that $14,000 of the total award, which is seven percent of the total award, could have represented damages for Rose Senior Care's annoyance and inconvenience.

As noted above, FMS Enterprise argues that the evidence to support a theory of annoyance and inconvenience was "totally unconvincing and insufficient." We disagree. According to Daniel McClain, the project could have been completed in under four months, yet the project took over a year to complete, causing the assisted living facility to remain a construction zone for months longer than expected. Rose Senior Care suffered the inconvenience of finding and employing other workers, including Brett McClain himself, to finish the project. According to Judi Rose, the construction delays caused Rose Senior Care to suffer financial distress, annoyance, and inconvenience that prevented expansion of the business and interfered with retention of employees. Giving Rose Senior Care's evidence every reasonable and legitimate inference, and assuming the jury accepted its witnesses' testimony as true, we determine that sufficient evidence was presented to support the jury's award of damages. In that FMS Enterprise argues only that the evidence was insufficient to support an award of damages for annoyance and inconvenience—FMS Enterprise does not argue that damages for annoyance and inconvenience were otherwise unrecoverable—we further determine that the evidence was sufficient to justify an award of $14,000 for Rose Senior Care's annoyance and inconvenience. Accordingly, Rose Senior Care's evidence was sufficient to justify the jury's $200,000 verdict.

We turn now to FMS Enterprise's claim that the trial court abdicated its judicial responsibility by simply adopting the jury's verdict. This assertion is contradicted by the appendix record. The transcript of the hearing on FMS Enterprise's motion shows that the trial court acknowledged its discretion to set aside the verdict and chose not to exercise that discretion, finding that the jury's verdict was proper. Having determined that sufficient evidence existed to justify the jury's verdict, we conclude that the trial court did not abuse its discretion in denying FMS Enterprise's motion for a new trial.[7]

For the foregoing reasons, we affirm.

---

[6] We observe that there is no indication in the appendix record that FMS Enterprise requested that the verdict form direct the jurors to make separate determinations as to liability or damages on the various claims asserted by Rose Senior Care. Consequently, we cannot definitively determine how the jury may have apportioned its verdict.

[7] FMS Enterprise dedicates one paragraph of its brief to a discussion of the jury's deliberations. Therein, FMS Enterprise asserts, "It strains credibility to conclude that the jury took its duties conscientiously when it returned its quick verdict, a round-figure of $200,000; clearly, little thought or diligent consideration of the evidence could have taken place." FMS Enterprise did not include an assignment of error in its brief addressing jury misconduct, nor did it provide any citation to the law on that issue. FMS Enterprise even admits that "the jury's verdict may not amount to jury misconduct." Because the issue of jury misconduct has not been properly briefed, we decline to consider that issue now. *See* West Virginia Rules of Appellate Procedure 10(c)(7), in part ("The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error.").

Affirmed.

**ISSUED:** August 30, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn